49 F.3d 1476
 Robert Henry WERNER aka Redelk Ironhorse Thomas, Plaintiff-Appellant,
v.
O. Lane McCOTTER, Scott Carvor, David R. Franchina, Jeffrey
Galli, Nancy Kemp, Richard Burt, Lynn Waller, and
C. Kim Thompson, Defendants-Appellees.
 No. 94-4130.
 United States Court of Appeals,
Tenth Circuit.
 March 14, 1995.
 
 Robert Henry Werner aka Redelk Ironhorse Thomas, pro se plaintiff-appellant.
 Elizabeth King, Asst. Atty. Gen., and Jan Graham, Atty. Gen., State of Utah, Salt Lake City, UT, for defendants-appellees.
 Before SEYMOUR, Chief Judge, McKAY and HENRY, Circuit Judges.
 McKAY, Circuit Judge.
 
 
 1
 Mr. Robert Werner, aka (and hereinafter referred to as) Mr. Thomas, currently an inmate in the Utah prison system, appeals summary judgment entered against him in a civil rights action brought under 42 U.S.C. Sec. 1983 and 42 U.S.C. Sec. 2000bb-1 (Supp. V 1993). His pro se complaint alleges that the Utah prison system unconstitutionally interferes with the free exercise of his chosen religion, Native American shamanism, and he seeks injunctive relief and damages from the Defendants (each an officer in the Utah penal system) in both personal and official capacities. After enduring a long barrage of preliminary motions from Mr. Thomas, the Defendants moved for summary judgment, claiming both qualified immunity (with respect to the damages claim) and adherence to the standards of Turner v. Safley, 482 U.S. 78, 107 S.Ct. 2254, 96 L.Ed.2d 64 (1987), and O'Lone v. Estate of Shabazz, 482 U.S. 342, 107 S.Ct. 2400, 96 L.Ed.2d 282 (1987) (as to the merits of Mr. Thomas's First Amendment claim). The district court granted summary judgment without addressing any of the legal or factual merits of any of Mr. Thomas's claims.
 
 
 2
 Construed liberally, the complaint alleges four violations of Mr. Thomas's right of free exercise. First, and most seriously, Mr. Thomas contends that the Defendants have denied him access to the sweat lodge and have thereby prevented him from engaging in a ritual fundamental to his faith. Second, it is undisputed that Defendants, pursuant to the applicable prison regulations, have prohibited him from receiving or possessing a medicine bag. Third, Mr. Thomas claims that the Defendants have failed to provide him with access either to a Cherokee Native American Spiritual Advisor or to religious literature appropriate to his beliefs. Lastly, he asserts that the Defendants have failed to obtain for him various religious symbols important to his faith (including, inter alia, a hawk feather and a crystal amulet).
 
 
 3
 In addressing these alleged constitutional violations, the Defendants, both in their motion for summary judgment and in their brief on appeal, rely upon the "reasonable relationship" test espoused in Turner, Shabazz, and their progeny in this circuit. This reliance is in error. The recent passage of the Religious Freedom Restoration Act of 1993 ("the Act") legislatively overturned a number of recent Supreme Court decisions, including Turner and Shabazz, by defining a statutory (if not a constitutional) right to the free exercise of religion. 42 U.S.C. Secs. 2000bb to 2000bb-4 (Supp. V 1993). The Act establishes the "compelling interest" test of Sherbert v. Verner, 374 U.S. 398, 83 S.Ct. 1790, 10 L.Ed.2d 965 (1963), and Wisconsin v. Yoder, 406 U.S. 205, 92 S.Ct. 1526, 32 L.Ed.2d 15 (1972), as the analytical framework governing "all cases where free exercise of religion is substantially burdened," 42 U.S.C. Sec. 2000bb(b)(1) (emphasis added):
 
 
 4
 Government may substantially burden a person's exercise of religion only if it demonstrates that application of the burden to the person--
 
 
 5
 (1) is in furtherance of a compelling governmental interest; and
 
 
 6
 (2) is the least restrictive means of furthering that compelling governmental interest.
 
 
 7
 Id. Sec. 2000bb-1(b). While we have yet to interpret the Act, our fellow circuits have determined that the claims of prisoners fall within its broad language, see Bryant v. Gomez, 46 F.3d 948, 948 (9th Cir.1995) (per curiam); Brown-El v. Harris, 26 F.3d 68, 69 (8th Cir.1994), and that the Act is to be applied retroactively, see 42 U.S.C. Sec. 2000bb-3(a); Brown-El, 26 F.3d at 69. This interpretation accords both with the plain language of the statute and with the legislative history of the Act, see, e.g., S.Rep. No. 111, 103d Cong., 1st Sess. 9-11, reprinted in 1993 U.S.C.C.A.N. 1892, 1898-1901, and we see no reason to disagree.
 
 
 8
 We therefore hold that a prison system may not substantially burden a prisoner's right of free exercise in the absence of a compelling state interest and must employ the least restrictive means necessary to further that interest.[1] "To maintain an organized society that guarantees religious freedom to a great variety of faiths requires that some religious practices yield to the common good," United States v. Lee, 455 U.S. 252, 259, 102 S.Ct. 1051, 1056, 71 L.Ed.2d 127 (1982), but "only those interests of the highest order and those not otherwise served can overbalance legitimate claims to the free exercise of religion," Wisconsin v. Yoder, 406 U.S. 205, 215, 92 S.Ct. 1526, 1533, 32 L.Ed.2d 15 (1972); see also Kennedy v. Meacham, 540 F.2d 1057, 1061 (10th Cir.1976); Weaver v. Jago, 675 F.2d 116, 118-19 (6th Cir.1982) (per curiam). Courts should continue to give "due deference to the experience and expertise of prison and jail administrators in establishing necessary regulations and procedures to maintain good order, security and discipline, consistent with consideration of costs and limited resources." S.Rep. No. 111, at 1900. Nonetheless, even within the prison context, "the state must do more than simply offer conclusory statements that a limitation on religious freedom is required for security, health or safety in order to establish that its interests are of the 'highest order.' " Jago, 675 F.2d at 119 (quoted with approval in S.Rep. No. 111, supra, at 1899).
 
 
 9
 This is not to say that all regulation of religious activity or expression must be supported by a compelling state interest. Constraints upon religious conduct will not fall within the ambit of the Act unless a "substantial burden" is placed upon a prisoner's capacity to exercise or express his or her sincerely held beliefs or faith. To exceed the "substantial burden" threshold, government regulation must significantly inhibit or constrain conduct or expression that manifests some central tenet of a prisoner's individual beliefs, see Bryant, 46 F.3d at 948; must meaningfully curtail a prisoner's ability to express adherence to his or her faith; or must deny a prisoner reasonable opportunities to engage in those activities that are fundamental to a prisoner's religion, see Cruz v. Beto, 405 U.S. 319, 322 & n. 2, 92 S.Ct. 1079, 1081-82 & n. 2, 31 L.Ed.2d 263 (1972) (per curiam) (holding that a follower of a minority religion must have "a reasonable opportunity of pursuing his faith comparable to the opportunity afforded fellow prisoners who adhere to conventional religious precepts").[2] Thus, reasonable time, place, or manner restrictions upon communal religious gatherings would often not necessitate the identification of a compelling state interest; however, regulations that, for example, prevented a devout Muslim from observing daily prayers would be subject to the "compelling interest" test. Compare Shabazz, 482 U.S. at 358-63, 107 S.Ct. at 2409-12. (Brennan, J., dissenting) (characterizing daily prayer as "core ceremony" of Islam). Similarly, the Act need not drive a prison to employ clergy from every sect or creed found within its walls; however, the failure to provide or allow reasonably sufficient alternative methods of worship would, in the absence of a compelling state interest, run afoul of the Act. Compare Beto, 405 U.S. at 322 n. 2, 92 S.Ct. at 1081-82 n. 2.
 
 
 10
 Turning now to the merits of Mr. Thomas's action, we find that we must remand for reconsideration by the district court the first of Mr. Thomas's claims for equitable relief. We may take judicial notice of the central and fundamental role played by the Sacred Sweat Lodge in many Native American religions. See Thomas v. Gunter, 32 F.3d 1258 (8th Cir.1994); Allen v. Toombs, 827 F.2d 563, 565 & nn. 4, 5 (9th Cir.1987); see also McKinney v. Maynard, 952 F.2d 350 (10th Cir.1991). Even under the demanding Turner standard, courts have acknowledged that the construction, maintenance, and use of a sweat lodge may not place an unreasonable burden upon prison officials. See Gunter, 32 F.3d at 1260 (analyzing impact of daily access to the sweat lodge; weekly access allowed); Toombs, 827 F.2d at 565-68 & nn. 5, 9 (upholding regulations denying access to the sweat lodge by high security inmates; weekly access by general prison population allowed); see also Maynard, 952 F.2d at 353 n. 9. Mr. Thomas has submitted credible evidence which indicates that the sweat lodge plays an indispensable role in his own sincerely held beliefs, and has thus made out a prima facie claim under the Act. The government, for its part, has indicated that Mr. Thomas has a Level One security classification, which places him in the prison's highest, and most heavily restricted, risk group. The record is almost devoid of any other evidence upon this issue. We have nothing by which to judge the magnitude of the governmental interest at stake; nothing by which to judge the burden that accommodation would place upon the state; nothing to which we may compare the restrictions placed upon Mr. Thomas; nothing, in short, to balance. We therefore reverse the grant of summary judgment upon this point and remand for further development of the record and for reconsideration under the "compelling interest" standard.
 
 
 11
 Out of an abundance of caution, we also remand for reconsideration Mr. Thomas's second claim for equitable relief. We recognize that religious symbols often play an important role in expressing an individual's adherence to a particular faith; possession of the symbol in and of itself manifests belief in one's religious creed. A prohibition against the possession of a medicine bag therefore could, for those faiths for whom the symbol has sufficient importance, qualify as a "substantial burden" under the Act. Mr. Thomas's prison, however, does not prohibit all inmates from possessing a medicine bag. It merely forbids those inmates with a Level One or Two security classification from possessing a medicine bag because these inmates are more apt to use the bag as a means by which to smuggle drugs. Moreover, even Level One or Two prisoners may possess less threatening religious symbols, such as hawk feathers. It seems likely that this regulation furthers a sufficiently important government interest in an appropriately narrow way. The Defendants, however, based their arguments for summary judgment upon the now-abandoned "reasonable relationship" test. The district court, moreover, did not explicitly set forth its analysis under the Act. We therefore have nothing concrete to review and are reluctant to base a judgment upon this record. As we are remanding to the district court for reconsideration of the first alleged violation, we remand this issue for further elaboration as well.
 
 
 12
 The record demonstrates that Mr. Thomas's latter claims are without factual merit. The prison at which Mr. Thomas is confined employs six part-time chaplains who provide nondenominational religious support to the prison population; while none of these individuals is a Native American, two Native American Spiritual Advisors provide appropriate services on a volunteer basis. Mr. Thomas, who is Cherokee, refuses to meet with these Spiritual Advisors because both are Lakota Sioux rather than Cherokee. Although the Utah prison system budgets no funds to assist inmates in the purchase of religious artifacts or literature, the Defendants in fact arranged for Mr. Thomas to receive a hawk feather donated by one of the volunteer Spiritual Advisors. Mr. Thomas, however, refused to accept any feather that did not come from a Spiritual Advisor of Cherokee heritage. The Defendants also arranged for Mr. Thomas to receive a book on American Indian religious beliefs, which he deigned to accept.
 
 
 13
 Mr. Thomas does not dispute that Native Americans compose a small percentage of the Utah prison population. The Defendants have introduced affidavits which indicate that they have made laudable efforts to accommodate Mr. Thomas's desire to pursue a Native American faith and that these efforts have been continuously thwarted by Mr. Thomas himself. Mr. Thomas has failed to respond with specific facts which would suggest that his claims have any factual basis whatsoever. Summary judgment as to all aspects of the third and fourth claims of his complaint is therefore appropriate. See Kendall v. Watkins, 998 F.2d 848, 850 (10th Cir.1993), cert. denied, --- U.S. ----, 114 S.Ct. 1075, 127 L.Ed.2d 392 (1994).
 
 
 14
 Irrespective of the final resolution of Mr. Thomas's equitable claims, summary judgment was properly entered against Mr. Thomas's claims for damages. Qualified immunity shields the Defendants from pecuniary liability unless they violated "clearly established" constitutional or statutory norms. Anderson v. Creighton, 483 U.S. 635, 639-40, 107 S.Ct. 3034, 3038-39, 97 L.Ed.2d 523 (1987); Harlow v. Fitzgerald, 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). Mr. Thomas bears the burden of proving that the law was clearly established at the time of the alleged violation(s). He cannot meet this burden. The Defendants, reasonably and in good faith, acted under the then-applicable standard of Turner and Shabazz. Congress supplanted that rather forgiving test with the markedly more rigorous "compelling state interest" framework after Mr. Thomas commenced this suit. The Defendants cannot therefore be held personally liable for constitutional or statutory violations created by this change in the law.
 
 
 15
 That portion of the district court's judgment pertaining to Mr. Thomas's first and second claims for equitable relief is REVERSED and REMANDED for reconsideration in light of this opinion. The remainder of the district court's decision is AFFIRMED.
 
 
 
 [1]
 Under Yoder, a plaintiff must make two threshold showings to state a prima facie free exercise claim. As the Act makes express reference to the Yoder standard, we see no reason not to read these threshold requirements into the statutory right created by the Act. First, the governmental action must burden a religious belief rather than a philosophy or a way of life. Wisconsin v. Yoder, 406 U.S. 205, 215-19, 92 S.Ct. 1526, 1533-35, 32 L.Ed.2d 15 (1972); Thomas v. Review Bd., 450 U.S. 707, 713-18, 101 S.Ct. 1425, 1429-32, 67 L.Ed.2d 624 (1981). Second, the burdened belief must be sincerely held by the plaintiff; government need only accommodate the exercise of actual religious convictions. See Yoder, 405 U.S. at 215-19, 92 S.Ct. at 1533-35; Thomas, 450 U.S. at 713-18, 101 S.Ct. at 1429-32. A plaintiff, however, need not hew to any particular religious orthodoxy; it is enough for the plaintiff to demonstrate that a government has interfered with the exercise or expression of her or his own deeply held faith. Thomas, 450 U.S. at 714-16, 101 S.Ct. at 1430-31 ("We see, therefore, that Thomas drew a line, and it is not for us to say that the line he drew was an unreasonable one. Courts should not undertake to dissect religious beliefs because the believer admits that he is 'struggling' with his position or because his beliefs are not articulated with the clarity and precision that a more sophisticated person might employ.... Particularly in this sensitive area, it is not within the judicial function and judicial competence to inquire whether the petitioner ... correctly perceived the commands of [his] faith. Courts are not arbiters of scriptural interpretation.")
 
 
 [2]
 The burden of proving the existence of a substantial interference with the right of free exercise rests upon the religious adherent. See Bryant, 46 F.3d at 948. After this threshold showing has been made, the burden then shifts to the government to demonstrate that the challenged regulation furthers a compelling state interest in the least restrictive manner. 42 U.S.C. Sec. 2000bb-1(b)