Tyrone SPEED, Plaintiff,

v.

Gary STOTTS, et al., Defendants.

No. 93–3525–KHV.

United States District Court, D. Kansas.

Sept. 30, 1996.

Tyrone Speed, Eldorado, KS, Pro Se.

Kevin D. Case, Office of the Attorney General, John J. Knoll, Topeka, KS, for defendants.

## MEMORANDUM AND ORDER

VRATIL, District Judge.

This matter comes before the Court on defendants' motion for summary judgment, which is contained in their *Answer* (Doc.

# 22) filed September 15, 1994.[1]  Plaintiff, an inmate at El Dorado Correctional Facility ("EDCF"), brings this *pro se* civil rights action pursuant to 42 U.S.C. § 1983, alleging that defendants violated his constitutional rights in connection with his confinement in administrative ·segregation at EDCF and at Lansing Correctional Facility ("LCF."). Specifically, plaintiff claims that defendants segregated him from the general population at LCF and held him in administrative segregation, both at LCF and later at EDCF, without providing notice of any disciplinary charges or a hearing on such charges, in violation of Kansas prison regulations and constitutional due process.  Plaintiff further claims that such segregation constitutes cruel and unusual punishment.  Plaintiff also claims that defendants segregated him from the general population because of racial prejudice and that such action has denied him his right to religious congregational worship.

Summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  Fed.R.Civ.P. 56(c); *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48, 106 S.Ct. 2505, 2509-10, 91 L.Ed.2d 202 (1986).  When deciding a summary judgment motion, the court considers all evidence and reasonable inferences therefrom in the light most favorable to the nonmoving party.  *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587–88, 106 S.Ct. 1348, 1356-57, 89 L.Ed.2d 538 (1986).  The existence of factual disputes is not an automatic preclusion to the grant of summary judgment.  *Liberty Lobby*, 477 U.S. at 247–48, 106 S.Ct. at 2509-10.  A "material" fact is one "that might affect the outcome of the suit under the governing law," and the issue is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248, 106 S.Ct. at 2510.  The initial

---

1. With their answer, defendants filed a report pursuant to *Martinez v. Aaron*, 570 F.2d 317 (10th Cir.1978), in order to clarify the claims set forth in plaintiff's complaint and to develop more fully the factual record.  By its *Order* (Doc. # 24) filed August 11, 1995, the Court gave notice that it would consider defendants' answer and attached *Martinez* report as a motion for summary judgment.

burden of demonstrating want of a genuine issue of material fact rests with the movant. Showing a lack of evidence to support the nonmovant's case discharges this burden. *Celotex Corp. v. Catrett,* 477 U.S. 317, 325, 106 S.Ct. 2548, 2553–54, 91 L.Ed.2d 265 (1986). After the movant has properly supported a summary judgment motion, the nonmoving party "must set forth specific facts showing that there is a genuine issue for trial" and not rely upon allegations or denials contained in the pleadings. *Liberty Lobby,* 477 U.S. at 256, 106 S.Ct. at 2514.

The movant is entitled to judgment as a matter of law should the nonmoving party insufficiently establish an essential element of a claim for which the nonmovant has the burden. *Celotex Corp.,* 477 U.S. at 322, 106 S.Ct. at 2552. Rule 56 should be construed to satisfy one of its principal purposes, namely, to segregate and eliminate factually unsupported claims and defenses. *Id.*

### FACTS [2]

On May 22, 1993, while plaintiff was incarcerated at LCF, a prison disturbance resulted in the death of one correctional officer and serious injury to an inmate and another officer. Through investigation of the incident, defendants identified plaintiff as an active participant in the disturbance and placed him in administrative segregation on May 24, 1993. Plaintiff denies any involvement in the May 22 incident, and for purposes of this motion, the Court assumes that he was not involved.

On October 18, 1993, defendants transferred plaintiff to EDCF and immediately placed him in administrative segregation at that facility. At that time, defendants completed an "Administrative Segregation Report," dated October 18, 1993. The report explains that,

> Inmate Speed has been identified as an active participant in a disturbance that took place on 5/22/93 at LCF. The result of that disturbance was that one Correctional Officer was killed, one was severely injured, and one inmate severely injured. An investigation into the disturbance is on

going [sic] at this time. Due to the above information, this inmates [sic] behavior constitutes a threat to the security and control of the facility.

The report notes that defendants segregated plaintiff pursuant to K.A.R. § 44–14–302(g). That regulation provides as follows:

> (g) Other security risk. The principal administrator may place in administrative segregation ... any inmate or group of inmates if such inmate or group of inmates are engaging in behavior which threatens the maintenance of security or control in the correctional facility. In such cases, the principal administrator shall, in writing, explain, for the record, the threat to security and show justification for segregation or lock-up. A copy of this explanation and justification shall be sent immediately to the secretary of corrections.

Plaintiff received a copy of the Administrative Segregation Report on October 18, 1993. Defendants have filed no disciplinary action or criminal charge against plaintiff in connection with the May 22 incident, nor have they conducted a hearing on the matter. Defendants continue to confine plaintiff in administrative segregation.

### DISCUSSION

A. Administrative Segregation

1. Due Process

■ Plaintiff alleges that defendants violated several Kansas prison regulations and that, by failing to comply with those regulations, they also violated his right to due process under the Fourteenth Amendment. Specifically, plaintiff complains that defendants are holding him in administrative segregation indefinitely, without providing notice of any disciplinary charges or a hearing. Plaintiff claims that defendants' conduct violates K.A.R. § 44–13–201(a) (an inmate must receive notice of disciplinary charges brought against him within 24 hours after a disciplinary report is filed); K.A.R. § 44–13–201(c) (a disciplinary report must be filed within 48 hours of the offense or the determination

2. The facts set forth in this memorandum and order are either uncontroverted or, where controverted, construed in the light most favorable to the nonmoving party. Immaterial facts and factual allegations not properly supported by the record are omitted.

that the inmate is implicated in the offense; an investigation into the offense shall be completed as soon as possible under existing circumstances, and the inmate may be held in administrative segregation pending completion of the investigation); and K.A.R. § 44–14–302(b)(3) (inmate held in administrative segregation pending investigation of an offense must be charged or released within 48 hours).

■ Kansas Department of Corrections regulations allow for the segregated confinement of inmates, and prison officials have broad administrative and discretionary authority to remove inmates from the general prison population. K.A.R. § 44–14–101 *et seq.; Hewitt v. Helms,* 459 U.S. 460, 467–68, 103 S.Ct. 864, 869, 74 L.Ed.2d 675 (1983). Prison administrators are accorded substantial deference regarding matters of internal security. *Whitley v. Albers,* 475 U.S. 312, 321–22, 106 S.Ct. 1078, 1085–86, 89 L.Ed.2d 251 (1986). Absent clear abuse or caprice in the exercise of their discretion, prison management is not subject to judicial review. *Marchesani v. McCune,* 531 F.2d 459, 462 (10th Cir.), *cert. denied,* 429 U.S. 846, 97 S.Ct. 127, 50 L.Ed.2d 117 (1976).

■ Inmates are not entitled to a particular degree of liberty in prison, and ordinarily a change in an inmate's prison classification does not deprive him of any liberty interest. *Templeman v. Gunter,* 16 F.3d 367, 369 (10th Cir.1994); *see also Meachum v. Fano,* 427 U.S. 215, 225, 96 S.Ct. 2532, 2538–39, 49 L.Ed.2d 451 (1976) (Due Process Clause does not bar inmate's transfer to facility with more restrictive conditions of confinement).

■ A decision by a prison official to place an inmate in administrative segregation does not implicate the Due Process Clause of the Fourteenth Amendment unless the confinement presents "the type of atypical, significant deprivation in which a state might conceivably create a liberty interest." *San-*

*din v. Conner,* —— U.S. ——, ——, 115 S.Ct. 2293, 2301, 132 L.Ed.2d 418 (1995). *Sandin* focuses our inquiry not on the language in the state prison regulations at issue, but on the nature or type of deprivation alleged. Under *Sandin,* a due process interest may be implicated if a deprivation "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Id.* at ——, 115 S.Ct. at 2300.[3] In *Sandin,* the Court found that administrative segregation was within the range of confinement to be normally expected and that segregated confinement did not constitute the kind of hardship giving rise to a protected liberty interest in remaining in the general population. *Id.* at ——, 115 S.Ct. at 2301; *see also McDiffett v. Stotts,* 902 F.Supp. 1419, 1425–26 (D.Kan.1995). Furthermore, this district has found on numerous occasions that Kansas prison regulations do not create a protected liberty interest. *See Rush v. McKune,* 888 F.Supp. 123, 125 (D.Kan.1995); *Lloyd v. Suttle,* 859 F.Supp. 1408, 1410 (D.Kan.1994).

The record contains no evidence that the deprivation plaintiff alleges rises to the level of an atypical or significant hardship, such that it constitutes a protected liberty interest rather than a normally expected, ordinary incident to confinement. Therefore, even if defendants have violated the prison regulations plaintiff has identified in connection with his confinement in administrative segregation, such violations fail to support plaintiff's claim that defendants violated his due process rights under the Constitution.

2. Equal Protection

■ Although we construe *pro se* pleadings liberally, plaintiff must still come forth with some factual support for his allegations in order to withstand defendants' motion for summary judgment. He has not done so, and the Court finds no merit in plaintiff's equal protection claim.[4] While plaintiff has

---

3. The Court applies the *Sandin* approach to the instant case, even though plaintiff was placed in segregation before *Sandin* was decided. *See Talley v. Hesse,* 91 F.3d 1411, 1413 (10th Cir.1996) (*Sandin* applied retroactively).

4. Defendants have provided voluminous statistics regarding distribution by race of inmates in administrative segregation and in the general population to support their assertion that they did not discriminate against plaintiff. The Court need not consider such statistics, however, because

generally alleged that racial prejudice underlay defendants' decision to segregate him from the general population, he offers no supporting facts or evidence to shore up this claim. The Court may not supply facts or construct a legal theory for him; consequently, summary judgment in favor of defendants on plaintiff's equal protection claim is appropriate.

### B. Cruel and Unusual Punishment

■■■ Plaintiff asserts that the conditions in administrative segregation constituted cruel and unusual punishment under the Eighth Amendment, but again, he offers no evidence or underlying facts to support his claim.

> The treatment a prisoner receives and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment. The Constitution does not mandate comfortable prisons, but neither does it permit inhumane ones. A prison official violates the Eighth Amendment when two conditions are met: 1) the deprivation alleged is sufficiently serious—the prison official's act or omission results in the denial of the minimum civilized measure of life's necessities; and 2) the prison official acts with "deliberate indifference"—he knows of and disregards an excessive risk to inmate health and safety.

*Brown v. Nix*, 33 F.3d 951, 954–55 (8th Cir. 1994), citing *Farmer v. Brennan*, 511 U.S. 825, ——, ——, 114 S.Ct. 1970, 1976, 1979, 128 L.Ed.2d 811 (1994). Even construing his complaint liberally and viewing the record in the light most favorable to him, plaintiff's complaints do not come within the purview of the Eighth Amendment prohibition against cruel and unusual punishment. The denial of privileges which normally accompanies confinement in administrative segregation does not amount to a denial of life's necessities or present a sufficiently serious potential for harm, nor does the record reveal deliberate indifference on the part of LCF or EDCF prison officials to any risk to plaintiff's health or safety.

### C. Free Exercise of Religion

■■■ A prison system may not "substantially burden" a prisoner's right of free exercise in the absence of a compelling state interest and must employ the least restrictive means necessary to further that interest. *Werner v. McCotter*, 49 F.3d 1476, 1479 (10th Cir.), *cert. denied,* —— U.S. ——, 115 S.Ct. 2625, 132 L.Ed.2d 866 (1995). To make a prima facie showing on a free exercise claim, a plaintiff must first demonstrate (1) that a governmental action burdens a religious belief rather than a philosophy or way of life, and (2) that the burdened belief is sincerely held. *Id.* at 1479 n. 1, citing *Wisconsin v. Yoder*, 406 U.S. 205, 215–19, 92 S.Ct. 1526, 1533–35, 32 L.Ed.2d 15 (1972). To meet the "substantial burden" requirement, the government action must "significantly inhibit or constrain conduct or expression that manifests some central tenet of a prisoner's individual beliefs"; must "meaningfully curtail a prisoner's ability to express adherence to his or her faith"; or must "deny a prisoner reasonable opportunities to engage in those activities that are fundamental" to the prisoner's religion. *Werner*, 49 F.3d at 1480. The burden of proving the existence of a substantial interference with the right of free exercise rests upon the prisoner; after the prisoner meets this threshold showing, the burden shifts to the government to demonstrate that the challenged action furthers a compelling state interest in the least restrictive manner. *Id.* at 1480 n. 2.

Plaintiff has not met his initial obligation of demonstrating that he has a sincerely held religious belief, or that defendants substantially interfered with such belief by placing him in administrative segregation. Plaintiff's conclusory allegation that defendants have interfered with his free exercise of religion does not suffice to withstand defendants' motion for summary judgment.

**IT IS THEREFORE ORDERED** that defendants' motion for summary judgment, contained in their *Answer* (Doc. # 22) filed September 15, 1994, be and hereby is sustained.

---

plaintiff has failed to carry his burden of presenting a prima facie case of discrimination.