

1996 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

10-22-1996

# Small v. Lehman

Precedential or Non-Precedential:

Docket 95-7279

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_1996

Recommended Citation

"Small v. Lehman" (1996). *1996 Decisions.* Paper 58.
http://digitalcommons.law.villanova.edu/thirdcircuit_1996/58

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 1996 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 95-7279
_____


ELWOOD SMALL, ERIC BAYNES,
BRIAN ROSS, LAWRENCE ELLISON,
ALI JAMAL ABDUL-QUDDUS,

v.

JOSEPH LEHMAN, Commissioner, PA Dept. of Corrections, ROBERT
BITNER, Chief Hearing Examiner, J. HARVEY BELL, Pardons Case
Specialist, J. DOE, Staff Attorney, WILLIAM J. LOVE, IRWIN S.
OWENS, Protestant Chaplin, FATHER BECKER, Catholic Chaplin,
STERYL GROVE, Grievance Coordinator at SCI-Huntingdon,
in their individual and official capacities,
Appellees.

Elwood Small; Eric Baynes,
Appellants
_____

An Appeal from the United States District Court
for the Middle District of Pennsylvania
D.C. No. 93-cv-01155
_____


Submitted Under Third Circuit LAR 34.1(a)  August 13, 1996

Before:  SLOVITER, Chief Judge,
COWEN, and ROSENN, Circuit Judges.

Opinion Filed October 22, 1996
_____


Elwood Small, AM-9183
Eric Baynes, AM-8345
SCI-HUNTINGDON
1100 Pike Street
Huntingdon, PA 16654-1112
Pro Se

Thomas W. Corbett, Jr., Attorney General
Michael L. Harvey, Deputy Attorney General
Calvin R. Koons, Sr., Deputy Attorney General
John G. Knorr, III, Chief Deputy Attorney General, Chief,
     Litigation Section
Office of Attorney General
15th Floor, Strawberry Square
Harrisburg, PA 17120
Counsel for Appellees.

_____

OPINION OF THE COURT
_____


ROSENN, Circuit Judge.

This appeal by four present and former inmates of the Pennsylvania State Correctional Institution at Huntingdon (SCI–Huntingdon) (collectively "Inmates"), presents a troublesome question relating to the provision of adequate facilities for religious worship in a prison environment. The inmates, Elwood Small, Eric Baynes, Brian Ross and Lawrence Ellison, members of the Sunni Muslim Brotherhood, sued prison officials under 42 U.S.C. § 1983 for allegedly violating their First and Fourteenth Amendment rights by providing only one Muslim worship service in their prison for all Muslim sects. They filed suit pro se in the United States District Court for the Middle District of Pennsylvania on July 30, 1993. In their briefs filed in the district court opposing the defendants' motion for summary judgment, the Inmates asserted for the first time an alternative claim under the Religious Freedom Restoration Act of 1993 (RFRA or Act), 42 U.S.C. § 2000bb.

The district court, adopting the Report and Recommendation of a magistrate judge, found that the prison officials did not violate the Inmates' First Amendment rights because the officials provided sufficient alternative means for Muslim worship. Further, the court found that the Inmates' RFRA claim was untimely. It noted, however, that the Inmates' claim did not implicate the Act. The Inmates filed a timely appeal to this court. We vacate the judgment and remand the case to the district court for further proceedings.

I.

The Inmates are members of the Sunni Muslim religion, one of five organized groups of practicing Muslims at SCI–Huntingdon. The prison provides Jummah and Taleem services for all the approximately two hundred Muslim inmates. All Muslim sects are invited to attend services, and generally upon arrival at services in the chapel separate into groups.

The Inmates requested separate space for religious services for Sunni Muslims, claiming that there are fundamental differences between the Muslim sects that prevent them from

worshiping together in one service.  The Sunni Muslim sect at SCI-Huntingdon approximates 75 in number and is one of the two largest at the institution.  The Inmates claim that several empty rooms are available at the prison at times when they wish to worship, that they are one of the larger Muslim sects in the installation, and that the institution could allow them to use one of the available rooms without excessive expense or additional security.  They contend that the differences between the Sunni Muslim Brotherhood and the other Muslim sects can be compared to the differences between Catholics and Protestants, who are provided facilities for separate services at Huntingdon. They also assert that Pennsylvania provides separate facilities for Sunni Muslim services at other maximum security prisons.

Prison officials denied the request, stating that the institution did not have the space or the resources to accommodate separate worship services.  Further, the officials asserted that they had consulted an expert in the Muslim faith who informed them that Muslim belief permits a combined worship service of various sects.

The Inmates submitted numerous unsworn written statements by prisoners asserting that the teachings of the institution's current Muslim worship service leader are in direct contradiction to their faith.  They assert that the Sunni Muslim religion mandates adherence to the four "Schools of Thought," and that they may not be led in prayer by anyone who does not subscribe to these doctrines.  The unsworn declarations stated: "If I choose to attend Jummah Services, I am required to practice it under the teachings and practices ([e.g.,] language, Dress Code and teachings of Iman Wallace Deem Muhammad) which are in direct conflict with the four (4) School's [sic] of Thought of the Sunni Muslim Brotherhood."

In their brief opposing the defendants' motion for summary judgment, the Inmates asserted that there are several unused areas in the Huntingdon institution that could be used for services on Fridays without burdening the State, and that the prison's security staff had been increased.  Further, they contend that the policy at SCI-Huntingdon violates RFRA.

The district court granted summary judgment for the defendants.  The court maintained that the Inmates provided no support for their allegations, and thus accepted the defendants' version of the facts as true.  It held that the defendants had a legitimate penological interest in denying the Inmates space for a separate Sunni Muslim service, finding that the institution lacked sufficient funds and staffing to provide the services. Further, the court noted that prison officials had consulted with an expert in the Muslim religion, who informed the officials that all Muslims are united as one regardless of "personal" designations such as Sunni Muslim.

The court also held that the Inmates may not assert their claim under RFRA because they did not raise it in their pleadings.  They sought reconsideration and moved the court to vacate its judgment to permit them to amend their complaint and add a claim under RFRA.  The district court denied the motion. Nonetheless, the court concluded that the Inmates' claim did not

implicate the Act because the State did not burden their exercise of religion.

                              II.

     The district court's grant of summary judgment is subject to plenary review.  See Wheeler v. Towanda Area Sch. Dist., 950 F.2d 128, 129 (3d Cir. 1991).

     The threshold and critical question here is the proper standard of review to be applied in addressing prisoners' constitutional claims.  We also must appropriately consider the policy of judicial restraint regarding prisoner complaints first set forth by the Supreme Court in Procunier v. Martinez, 416 U.S. 396 (1974), partially overruled by Thornburgh v. Abbott, 490 U.S. 401 (1989).  There the Court recognized that "the problems of prisons in America are complex and intractable, and more to the point, they are not readily susceptible of resolution by decree." Id. at 404-05.  Over a decade later, the Supreme Court not only reiterated these concerns, but pragmatically observed that where a state penal system is involved, as we have here, "federal courts have . . . additional reason to accord deference to the appropriate prison authorities."  Turner v. Safley, 482 U.S. 78, 85 (1986).  Nonetheless, the Court also recognized the importance of the right to religious worship, even as to state or federal prisoners.  The Court perceived that all prisoners must be afforded reasonable opportunities to "exercise the religious freedom guaranteed by the First and Fourteenth Amendments."  Cruz v. Beto, 405 U.S. 319, 322 n.2 (1972).

     In Turner, 482 U.S. at 93, and O'Lone v. Estate of Shabazz, 482 U.S. 342, 353 (1987), the Court held that a prison regulation may validly impinge on an inmate's constitutional rights if it is reasonably related to a legitimate penological interest.  A court may look to several factors in making its determination including the connection between the prison regulation and the legitimate governmental interest justifying the regulation, and whether there are alternative means open for the prisoner to exercise the right.  Turner, 482 U.S. at 89-90.  The court may also take into consideration the impact that accommodation of the constitutional right will have on prison resources and personnel.  Id. at 90.

     In the instant case, the district court held that SCI-Huntingdon's policy of permitting only one Muslim service was reasonably related to a legitimate penological interest.  It noted the institution's budgetary and space limitations, and the alternative Muslim services open to the Inmates.  Thus, under the standards set forth in Turner and O'Lone, the court granted summary judgment for the defendants.

     Although the district court may have correctly applied the standards established in Turner and O'Lone, Congress enacted the Religious Freedom Restoration Act in 1993 to legislatively overrule the Supreme Court's standard of review of religious claims as set forth in those cases.  Through RFRA, Congress intended to "restore the compelling interest test . . . and to guarantee its application in all cases where free exercise of religion is substantially burdened."  42 U.S.C § 2000bb(b)(1)(Supp. 1996).  Although the Inmates may not have

mentioned RFRA in their amended complaint, they did refer to it in their opposition-brief to the defendants' motion for summary judgment and in their motion for a second amendment to their complaint. The Act was in force and as it was the applicable law, the district court was required to apply the compelling interest test to the facts of the instant case, particularly since it had been called to its attention. As Judge Pollak aptly observed in Muslim v. Frame, 897 F. Supp. 215, 216 (E.D. Pa. 1995), "RFRA is the law regardless of whether parties mention it." We therefore hold that RFRA, being in effect at the time the district court heard this case, should have been considered by the district court before entering summary judgment.

                                III.
     RFRA provides, in pertinent part:
          (a) IN GENERAL.--Government shall not
     substantially burden a person's exercise of religion
     even if the burden results from a rule of general
     applicability, except as provided in subsection (b).
          (b) EXCEPTION.--Government may substantially
     burden a person's exercise of religion only if it
     demonstrates  that application of the burden to the
     person--
          (1) is in furtherance of a compelling governmental
     interest; and
          (2) is the least restrictive means of furthering
     that compelling governmental interest.


42 U.S.C. § 2000bb-1 (Supp. 1996). We agree with other courts of appeal that have interpreted RFRA to hold that the Act applies to the claims of prisoners. See, e.g., Werner v. McCotter, 49 F.3d 1476, 1479 (10th Cir.), cert. denied, Thomas v. McCotter, 115 S. Ct. 2625 (1995); Bryant v. Gomez, 46 F.3d 948, 949 (9th Cir. 1995).
     Thus, the first question to be determined under RFRA is whether the State has substantially burdened the Inmate's exercise of religion; and, if so, whether the State can justify the imposition of that burden. Although the district court did not believe it need reach the Inmates' RFRA claim, it apparently decided to address the issue. The court concluded that the Inmates' claim did not implicate the Act. It adopted the magistrate judge's recommendation, which stated that the Inmates:
          have not alleged that the government has "burdened"
          their exercise of religion. Rather they [complain]
          that the government has not taken affirmative steps to
          provide them with a place to worship. . . .
          Accordingly, because the Act restricts only burdensplaced upon
the exercise of religion, it is not
          applicable to this claim of failure to provide the
          plaintiffs with a worship service of their choice.

Thus, the court found that the Inmates had not proven that the

State has substantially burdened their exercise of religion under the Act.

In their objections to the magistrate judge's report, the Inmates claimed that their rights to free exercise of their religion have been substantially burdened by the defendants because they are compelled to attend Jummah and Taleem services that are led by the American Muslim Mission, which has different practices, teachings, dress codes, and Imams. The American Muslim Mission's spiritual leader is Imam Wallace Deem Muhammad, who they assert does not follow the four (4) Schools of Thought of the Sunni Muslim Brotherhood. The Inmates maintain that the American Muslim Mission's "teachings and beliefs" are "in direct contradiction" with their beliefs. In particular, they claim that their religion prohibits them from "being led in Jummah prayer by someone who does not follow one of the Four Schools of Thought, which the American Muslims do not."

Under RFRA, the Inmates are required to show that a "substantial burden" to their free exercise of religion has resulted from the State's actions. Goodall v. Stafford County Sch. Bd., 60 F.3d 168, 171 (4th Cir. 1995), cert. denied, 116 S. Ct. 706 (1996); Werner v. McCotter, 49 F.3d 1476, 1480 (10th Cir.), cert. denied, 115 S. Ct. 2625 (1995). If they establish a substantial burden, then the burden of proof shifts to the State to show that it has a "compelling interest" in its actions and is furthering that interest by the "least restrictive means." Werner, 49 F.3d at 1480 n.2; Campos v. Coughlin, 854 F. Supp. 194, 206 (S.D.N.Y. 1994).

The showing, however, required to prove a substantial burden under RFRA seems to be unsettled. In Werner v. McCotter, the Tenth Circuit Court of Appeals provided the following summary of standards which seem to be applicable under RFRA:

> To exceed the "substantial burden" threshold, government regulation must significantly inhibit or constrain conduct or expression that manifests some central tenet of a prisoner's individual beliefs; must meaningfully curtail a prisoner's ability to express adherence to his or her faith; or must deny a prisoner reasonable opportunities to engage in those activities that are fundamental to a prisoner's religion.

49 F.3d at 1480 (citations omitted); see also Bryant v. Gomez, 46 F.3d 948, 949 (9th Cir. 1995) (to survive summary judgment under "substantial burden" test, plaintiff must prove facts that "show that the activities which he wishes to engage in are mandated by [his] religion.")

In the instant case, the district court concluded that the State had not burdened the Inmates' free exercise of religion because the Inmates alleged only that the prison institution had not taken any affirmative action and had not provided them with the separate facilities that they requested and considered necessary for worship. We agree that the State does not have an affirmative duty to provide every prison inmate with the clergy

person or the service of his choice.  Gittlemacker v. Prasse, 428 F.2d 1, 4-5 (3d Cir. 1970).  However, an opportunity to worship as a congregation by a substantial number of prisoners may be a basic religious experience and, therefore, a fundamental exercise of religion by a bona fide religious group.

> The exercise of religion commonly involves group worship, and when the only option available for a prisoner is under the guidance of someone whose beliefs are significantly different from or obnoxious to his, the prisoner has been effectively denied the opportunity for group worship and the result may amount to a substantial burden on the exercise of his religion.  See SapaNajin v. Gunter, 857 F.2d 463, 464-65 (8th Cir. 1988).

Weir v. Nix, 890 F. Supp. 769, 788 (S.D. Iowa 1995) (citations omitted).  The failure to provide otherwise available facilities may therefore be, depending on whether it is compelled, as substantial a burden on that right as would the removal of pertinent facilities from actual congregational worship.  It may meaningfully bar their ability to express adherence to their faith.

Here, the Inmates claimed to have significant ideological differences with other Muslim sects, and that the prison's insistence on requiring all Muslims to worship collectively places a burden on their free exercise of religion.  In particular, they urge that their faith "mandates" that they not be led in worship by a non-Sunni Muslim.  On the other hand, the defendants assert that they have been informed by a reliable Muslim authority that the Inmates can comply with their religious faith if they worship in a combined service with other Muslims. With this factual and material issue in serious dispute, we do not believe that it can be determined on a motion for summary judgment, particularly with the compelling standard now prescribed by RFRA.

Even if the Inmates are able to establish that their religious right to worship has been substantially burdened by the defendants' inaction, this is not the end of the matter.  A remaining question is whether conditions and circumstances at the prison compel the combined worship service and whether the action taken by the prison authorities is the least restrictive means of furthering the alleged compelling governmental interest. Although the State may have a compelling interest in operating an efficient and reasonably cost driven penal institution, the Inmates dispute whether the prison officials have taken the least restrictive measures in furthering that interest.  Prison officials may not take shelter in the mere words of "security" and "lack of funds";  they must substantiate the permissibility of their conduct under the statute.  The disputes of material fact do not permit a trial court to resolve them on a motion for summary judgment.

IV.

In summary, we hold that RFRA was the law of the land when the Inmates filed their complaint and that it applies to State and Federal prisons.  The Inmates therefore were entitled to amend their complaint accordingly.  We further hold that under RFRA the compelling interest standard applies to a claim charging state prison officials with substantially burdening the rights of prisoners to the free exercise of their religion.  Therefore, the district court should not have decided genuine issues of material fact by summary judgment when it concluded that RFRA was inapplicable to the Inmates' claims.  Accordingly, the judgment of the district court will be vacated and the case remanded to the district court for further proceedings consistent with this opinion.

Each side to bear its own costs.