UNITED STATES COURT OF APPEALS
TENTH CIRCUIT

**Filed 1/22/97**

JAMES T. MOLLIE,

          Plaintiff-Appellant,

v.

RON WARD, Warden of Oklahoma State
Penitentiary, CLIFF URANGA, Deputy
Warden, JIM HARRIS, Chaplain,
MELVIN CAMPBELL, c.o. II Sgt., and
DON WEGENKEGHT, Kitchen
Supervisor,

          Defendants-Appellees.

Case No. 96-7070

(D.C. 95-CV-315)
(Eastern District of Oklahoma)

---

### ORDER AND JUDGMENT[*]

---

Before BRORBY, EBEL, and HENRY, Circuit Judges.

---

Plaintiff James T. Mollie, a prisoner in the custody of the Oklahoma Department

of Corrections proceeding in forma pauperis and pro se, appeals from an order denying

his claims for relief under 42 U.S.C. § 1983. In his complaint, Mr. Mollie alleged that

---

[*]     This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

various prison officials violated his rights under the First, Eighth, and Fourteenth Amendments to the United States Constitution. Mr. Mollie, who is Muslim, argued that the prison provides insufficient Islamic services; that officials harassed him for his religious beliefs and prevented him from properly observing Ramadan, a special month of prayer and fasting the celebration of which is one of the five pillars of Islam; and that officials placed him in a maximum security unit in retaliation for his attempts to seek relief for these alleged violations of his rights. In a well-reasoned order, the district court granted the defendants' Motion to Dismiss/Motion for Summary Judgment. Because we conclude that summary judgment for the defendants was proper, we affirm.[1]

We review a summary judgment order de novo applying the same standard as that required of the district court. Boling v. Romer, No. 96-1115, 1996 WL 687886, at *1 (10th Cir. Dec. 2, 1996). "Summary judgment is appropriate only if there are no genuinely disputed issues of material fact and, viewing the record in the light most favorable to the nonmoving party, the movant is entitled to judgment as a matter of law." Id. We liberally construe the pleadings of a pro se plaintiff. Haines v. Kerner, 404 U.S. 519, 520-21 (1972).

---

[1] After examining the briefs and appellate record, this panel has unanimously determined that oral argument would not materially assist the determination of this appeal. See Fed. R. App. P. 34(f); 10th Cir. R. 34.1.9. The case is therefore ordered submitted without oral argument.

**First and Fourteenth Amendment claims**

Mr. Mollie argues that his right to free exercise of religion under the First and Fourteenth Amendments was violated when he was placed in a maximum security unit in retaliation for seeking relief through the grievance process. However, he points to no specific evidence that his transfer was motivated by anything other than security concerns. A prison official testified that after the Oklahoma City bombing on April 19, 1995, Mr. Mollie and another inmate at the Tallawanda Heights Minimum Unit ("Tallawanda Heights") of the Oklahoma State Penitentiary had been overheard by other inmates speculating that the bombing was undertaken to retaliate for the bombing of a Muslim temple. The official testified that because of the strong feelings accompanying that tragedy, Mr. Mollie and the other prisoner were transferred to another housing unit for their own safety, and that Mr. Mollie continued to receive minimum security privileges. (Early reports suggesting some connection between the bombing and either Islamic or Middle Eastern groups have been completely rejected.) Mr. Mollie does not dispute this, except by raising the otherwise unsupported allegation that the stated reason for the transfer was a pretext.

Nor is there any evidence in the record that the reason for the transfer was "to punish him for his religious views." Aplt's Br. at 3. Although Mr. Mollie alleged that he was harassed based on his religion, he reports no specific instances of harassment. "Mere allegations" of retaliatory motive are insufficient to defeat summary judgment. See

Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986) (to defeat summary judgment, nonmovant must "set forth specific facts"); Smith v. Maschner, 899 F.2d 940, 948 n. 4 (10th Cir. 1990) (citing Liberty Lobby for the proposition that "a plaintiff must produce evidence of improper motive, rather than relying upon allegations, to defeat a summary judgment motion").

Mr. Mollie does assert two examples of alleged religious mistreatment: that his requests for Islamic services were denied or ignored and that, during Ramadan, prison officials refused to serve his morning meal before sunrise so that he might fast during the day as required by the tenets of Islam. We evaluate these claims under the standards of the Religious Freedom Restoration Act of 1973 (the Act), see Werner v. McCotter, 49 F.3d 1476, 1479 (10th Cir. 1995) (applying these standards to a prisoner's First Amendment claim), which states that "governments should not substantially burden religious exercise without compelling justification." 42 U.S.C. § 2000bb(a)(3). Under the Act, in order to state a prima facie First Amendment free exercise claim, the plaintiff must establish three threshold requirements by a preponderance of the evidence. "The governmental action must (1) substantially burden, (2) a religious belief rather than a philosophy or way of life, (3) which belief is sincerely held by the plaintiff." United States v. Meyers, 95 F.3d 1475, 1482 (10th Cir. 1996). Because we conclude that the evidence fails to raise a triable issue as to whether Mr. Mollie's religious beliefs were substantially burdened, we need not consider the remaining two requirements.

We have explained that in order for a governmental action to constitute a "substantial burden," the action

> must significantly inhibit or constrain conduct or expression that manifests some central tenet of a prisoner's individual beliefs; must meaningfully curtail a prisoner's ability to express adherence to his or her faith; or must deny a prisoner reasonable opportunities to engage in those activities that are fundamental to a prisoner's religion.

Werner, 49 F.3d at 1480 (citations omitted). The prison Chaplain testified, and Mr. Mollie does not dispute, that the Department of Corrections had contracted with two Muslim clergymen, who set their own schedule and only visited Tallawanda Heights rarely "due to the small number of offenders housed at [Tallawanda Heights]." Rec. doc. 10, att. B; see Werner, 49 F.3d at 1480 (the Act does not require "a prison to employ clergy from every sect or creed found within its walls . . . ."). There was also undisputed testimony that prisoners who are Muslim were permitted to hold prayer services. See O'Lone v. Estate of Shabazz, 482 U.S. 342, 359 (Brennan, J., dissenting) (characterizing weekly Jumu'ah prayer services as "the central religious service of [the] Muslim faith").

Mr. Mollie claims that his morning Ramadan meal was not delivered in time and that he was forced to drop an art class because of a schedule conflict with the Ramadan evening meal. It appears from the testimony of Shirley Leeper, a correctional counselor who discussed Mr. Mollie's complaint with "the Muslim Chaplains," that Mr. Mollie's meals were properly served before sunrise, at times approved by the Muslim clergymen, although not at the specific time requested by him. See Rec. doc. 10, att. L. Again, Mr.

5

Mollie presents no evidence to support his claim that the meals did not arrive in time for him to breakfast consistently with observance of Ramadan. Further, that the specially scheduled evening meal conflicted with an art class was an inconvenience that does not amount to a "substantial burden." See Thiry v. Carlson, 78 F.3d 1491, 1495 (10th Cir. 1996) ("[T]he incidental effects of otherwise lawful government programs 'which may make it more difficult to practice certain religions but which have no tendency to coerce individuals into acting contrary to their religious beliefs' do not constitute substantial burdens on the exercise of religion." (quoting Lyng v. Northwest Indian Cemetery Protective Ass'n, 485 U.S. 439, 450-51 (1988))). The uncontroverted evidence that prison officials accommodated Mr. Mollie's right to free exercise is sufficient to support summary judgment on his free exercise claims. See Rec. doc. 10, att. C (special dining accommodations were made for Muslim prisoners and Christian service was delayed until Muslim prisoners completed their prayers and meal).

**Eighth Amendment claim**

Mr. Mollie also appears to claim that his placement among dangerous offenders in a maximum security unit placed him at risk of bodily harm, particularly in light of the reports that the Oklahoma City bombing had been carried out by Muslims. He claims that this amounted to cruel and unusual punishment in violation of the Eighth Amendment to the United States Constitution. Defendant-appellee Cliff Uranga, Deputy Warden,

testified that the facility to which Mr. Mollie was transferred was not a maximum security facility and that he was not housed with "high security inmates." Rec. doc. 10, att. G. Further, although Mr. Mollie disputes testimony that he made remarks supportive of the perpetrators of the Oklahoma City bombing, he does not dispute that whatever remarks he made increased the hostility of other inmates. Whatever Mr. Mollie's remarks were, there is no evidence that he was harmed or even threatened by another prisoner, or by anyone, during the twelve days in which he claims he was exposed to high security inmates. In the absence of any such evidence, summary judgment in favor of the defendants was proper.

Because Mr. Mollie failed to raise a genuine issue as to any material fact, we conclude that summary judgment was properly entered in favor of the appellees. We therefore AFFIRM the judgment of district court.

The mandate shall issue forthwith.

Entered for the Court,


Robert H. Henry
Circuit Judge

7