Fingal JOHNSON, Plaintiff,

v.

Bill MARTIN, et al, Defendants.

Michael Jenkins, et al., Plaintiffs,

v.

Bill Martin, et al., Defendants.

Case Nos. 2:00–CV–75, 1:01–CV–515.

United States District Court,
W.D. Michigan,
Southern Division.

Sept. 26, 2002.

Fingal Johnson, Ionia, MI, Michael J. Steinberg, Detroit, MI, Daniel E. Manville, Ferndale, MI, for Plaintiffs.

Linda M. Olivieri, Christine M. Campbell, John L. Thurber, Patrick J. Wright, Lansing, MI, for Defendants.

Kevin J. Hasson, Washington, DC, Eddie Lee Thompson, Marenisco, MI, for Movants.

Charles R. Gross, Grand Rapids, MI, for Intervenors.

## *OPINION*

ENSLEN, District Judge.

This matter is before the Court on Defendants' Objections to Magistrate Judge Greeley's Report and Recommendation of April 16, 2002. Magistrate Judge Greeley has recommended denial of Defendants' Motion for Partial Summary Judgment. Defendants' moved for partial summary judgment on the ground that the Religious Land Use and Institutionalized Persons Act of 2000 ("RLUIPA"), 42 U.S.C. § 2000cc–1,[1] is unconstitutional, as applied to institutionalized persons, under the First Amendment Establishment Clause and the Tenth Amendment, and is an unconstitutional exercise of Congress' Spending Power and Commerce Power.[2] The Becket Fund for Religious Liberty and the United States have intervened and filed briefs in support of RLUIPA's constitutionality. On September 21, 2001, Magistrate Judge Greeley consolidated two previously filed suits into the present lawsuit. The case was certified as a class action limited to injunctive relief under Rule 23(b)(2)[3] on April 29, 2002.[4] (Dkt. No. 146).

## I. Background

Plaintiffs are the Melanic Islamic Palace of the Rising Sun, a non-profit religious

1. In 1993 Congress enacted the Religious Freedom Restoration Act ("RFRA"), 42 U.S.C. § 2000bb, which outlawed governmental attempts to substantially burden any person's exercise of religion even if the burden was derived from a rule of general applicability. The Supreme Court ruled RFRA unconstitutional as beyond the scope of Congress' power under § 5 of the Fourteenth Amendment. *Boerne v. Flores*, 521 U.S. 507, 117 S.Ct. 2157, 138 L.Ed.2d 624 (1997). RLUIPA was Congress' response to *Boerne* and was enacted as a separate piece of legislation in 2000.

2. To this Court's knowledge only two other district courts have addressed similar claims regarding RLUIPA. Both upheld the constitutionality of RLUIPA. *Gerhardt v. Lazaroff*, 2002 WL 2008165 (S.D.Ohio Feb.25, 2002); *Mayweathers v. Terhune*, 2001 WL 804140 (E.D.Cal. July 2, 2001). The Eastern District of Pennsylvania addressed the constitutionality of RLUIPA's land use provisions, also finding them constitutional. *Freedom Baptist Church of Delaware County v. Township of Middletown*, 204 F.Supp.2d 857 (E.D.Pa. 2002).

3. Federal Rule of Civil Procedure 23(b)(2) states: "the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole."

4. The Court certified the following classes pursuant to Federal Rule of Civil Procedure 23(b)(2):

(1) those current prisoners of the Michigan Department of Corrections who were members of the Melanic Islamic Palace of the Rising Sun ("Melanic") when it was designated as a security threat group by the Department of Corrections on January 7, 2000 and who either renounced membership in Melanic and/or were treated as members of a security threat group for not effectively renouncing membership in Melanic; (2) those current prisoners of the Michigan Department of Corrections who were members of Melanic as of January 7, 2000 and who have not been allowed to practice their religion in the same manner after the security threat group designation; and (3) those current prisoners of the Michigan Department of Corrections who were members of Melanic on January 7, 2000 and whose religious materials were confiscated after January 7, 2000 and/or who presently cannot possess Melanic religious materials.

corporation recognized in the State of Michigan; its President, Michael Jenkins; and prisoners Fingal Johnson, Vernon Pressley, Lacey J. Fondren and Morris Martin. Plaintiffs name as Defendants Michigan Department of Corrections ("MDOC") Director Bill Martin, MDOC Security Threat Group Coordinator Robert Mulvaney, and MDOC Deputy Director Dan Bolden. MDOC recognized Melanic Islamic Palace of the Rising Sun ("Melanic") as an official religion in 1983 pursuant to a consent decree. *Islamic Palace of the Rising Sun v. MDOC*, No. 82–72083 (E.D.Mich.1983). However, in January 2000 MDOC classified Melanic and its prisoner members as a security threat group. MDOC required members of Melanic to renounce their membership or face a higher security classification. MDOC also banned all Melanic materials from entering the prison.

Plaintiffs generally allege that the actions taken by Defendants violate their rights under the Due Process Clause, their First Amendment rights of freedom of religious worship, association and expression, their rights to be treated equally with other religious groups under the Equal Protection Clause, and their rights under RLUIPA. Specifically, Plaintiffs claim Defendants violated RLUIPA by banning the practice of Melanic religion throughout MDOC, by requiring members to renounce their association with Melanic, by confiscating Melanic materials and requiring members to dispose of Melanic literature, and by refusing to accept delivery of Melanic materials. Plaintiffs regard Defendants' treatment of the group as a dangerous and violent group as factually unwarranted and the treatment of security threat group members as inappropriate.

## II. Standard of Review

Under 28 U.S.C. § 636(b), a magistrate judge's report that is case-dispositive and/or concerns prisoner litigation shall be reviewed *de novo* by the district court, and the court may accept, reject, or modify the findings and recommendations of the magistrate judge. 28 U.S.C. § 636(b); L. Civ. R. 72.3(b).

Review of a motion for summary judgment requires the Court to determine if there is no genuine issue as to any material fact such that the moving party is entitled to judgment as a matter of law. Fed. R.Civ.P. 56(c). It is the function of the Court to decide "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251–52, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The question is "whether a fair-minded jury could return a verdict for the [non-moving party] on the evidence presented." *Id.* at 252, 106 S.Ct. 2505. The facts are to be considered in a light most favorable to the non-moving party, and ". . . all justifiable inferences are to be drawn in his favor." *Schaffer v. A.O. Smith Harvestore Prod., Inc.*, 74 F.3d 722, 727 (6th Cir.1996) (quoting *Anderson*, 477 U.S. at 255, 106 S.Ct. 2505) (other citations omitted).

## III. Analysis

Defendants argue that RLUIPA is unconstitutional on four grounds: (1) it violates the Establishment Clause of the First Amendment; (2) Congress exceeded its authority under the Commerce Clause in enacting the statute; (3) Congress exceeded its authority under the Spending Clause in enacting the statute; and (4) it violates the Tenth Amendment. The Court will review each argument in turn.

### A. RLUIPA Violates the Establishment Clause of the First Amendment

RLUIPA states:

No government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution, as defined in section 1997 of this title, even if the burden results from a rule of general applicability, unless the government demonstrates that imposition of the burden on that person-

> (1) is in furtherance of a compelling governmental interest; and

> (2) is the least restrictive means of furthering that compelling governmental interest.

Defendants argue that RLUIPA violates the Establishment Clause because it enhances the rights of religious groups over those of secular groups by subjecting regulation of religious activity in prison to strict scrutiny. The Establishment Clause provides "Congress shall make no law respecting an establishment of religion...." U.S. Const. Amend. I. Defendants fail to acknowledge that Congress has the authority to legislate in any way and in any area constitutionally permissible. Therefore, although in prior Supreme Court decisions the Court has applied a rational basis review to prison regulation affecting inmates' constitutional rights,[5] Congress may legislatively overturn such Supreme Court decisions and impose a higher standard of review. *Werner v. McCotter,* 49 F.3d 1476, 1479 (10th Cir.1995); *Allah v. Menei,* 844 F.Supp. 1056, 1062 (E.D.Pa. 1994). Congress has done just that with RLUIPA.

The real question then is whether RLUIPA, separate from the standard of review it establishes, violates the Establishment Clause.

▮ To satisfy the Establishment Clause, a statute:

(1) must have a secular purpose;

(2) its primary effect must be neither to advance nor to inhibit religion; and

(3) it must not foster excessive governmental entanglement with religion.

*Lemon v. Kurtzman,* 403 U.S. 602, 612–13, 91 S.Ct. 2105, 29 L.Ed.2d 745 (1971). As elucidated below, RLUIPA meets all three criteria.

### 1. Secular Purpose

Defendants argue that RLUIPA has a religious purpose because it affords religious groups greater protection from interference by prison officials than any secular group commands. However, Defendants misinterpret the purpose of RLUIPA. The clear language of RLUIPA indicates it is intended to protect the free exercise of religion from unnecessary governmental interference, not to favor religious activity over secular activity. As the statute states, "[n]o government shall impose a substantial burden on the religious *exercise* of a person residing in or confined to an institution." 42 U.S.C. § 2000cc–1(a). (emphasis added). A reasonable observer would understand this language to indicate government endorsement of the free exercise of religion and not of a particular religion or even of religion in general. *See Chaudhuri v. Tennessee,* 130 F.3d 232, 237 (6th Cir. 1997) (holding that reaction of reasonable observer is relevant to decision on Establishment Clause challenge). The Sixth Circuit Court of Appeals has gone so far as to uphold a law that exempted religious organizations from registration requirements on the ground that the statute did not "evidence governmental advancement of religion merely because special consideration is given to religious groups." *Dayton Area Visually Impaired Persons,*

---

**5.** Regulation of prison activity that impinges on inmates' constitutional rights is typically subject to rational basis scrutiny. *Turner v. Safley,* 482 U.S. 78, 107 S.Ct. 2254, 96 L.Ed.2d 64 (1987).

*Inc. v. Fisher,* 70 F.3d 1474, 1483 (6th Cir.1995). In light of that decision, this Court would be hard pressed to find an even more generally applicable statute to have a religious purpose.

Merely addressing religion in the subject matter of a statute does not mean the statute necessarily has a religious purpose. The Supreme Court concluded that to serve a "secular purpose," a law does not have to be unrelated to religion. *Corp. of the Presiding Bishop of the Church of Jesus Christ of Latter–Day Saints v. Amos,* 483 U.S. 327, 107 S.Ct. 2862, 97 L.Ed.2d 273 (1987). Rather, the Court held that because the purpose of the statute at issue was to keep the government from "abandoning neutrality and acting with the intent of promoting a particular point of view in religious matters," it had a secular purpose. *Amos,* 483 U.S. at 335, 107 S.Ct. 2862 (upholding § 702 of the Civil Rights Act of 1964 thereby allowing the Mormon Church to terminate employment on the basis of religion). While RLUIPA mandates accommodation of religious practice, the purpose of the statute is not to favor or disfavor religion. The purpose of the statute is to insure that the government does neither, but rather adopts a neutral position with respect to religion. Government should not burden the practice of religion nor should it champion religion. RLUIPA helps to realize this stance.

RLUIPA addresses religion and religious practice in an effort to accommodate both. In *Amos,* the Supreme Court determined, "it is a permissible legislative purpose to alleviate significant governmental interference with the ability of religious organizations to define and carry out their religious missions." *Amos,* 483 U.S. at 335, 107 S.Ct. 2862. RLUIPA seeks to accomplish just this sort of permissible accommodation. Generally courts have upheld legislative accommodation of reli-

gion as long as it does not "impose a substantial burden on non-beneficiaries or provide[ ] a benefit to religious believers without providing a corresponding benefit to a large number of non-religious groups or individuals." *Childrens' Healthcare is a Legal Duty v. Min De Parle,* 212 F.3d 1084, 1095 (8th Cir.2000). RLUIPA clearly imposes no burden on non-beneficiaries, though Defendants argue that it does provide a benefit to religious believers not available to a large number of non-religious groups or individuals.

Defendants claim that religious groups benefit from a higher standard of review applicable to regulation of their activity of which secular groups cannot take advantage. This so called benefit, however, is not limited to religious groups. Every institutionalized person benefits from an unfettered ability to exercise his or her religion. Whether an individual chooses to practice religion or not does not deny him or her the benefit of RLUIPA. The provisions of RLUIPA apply to all institutionalized persons and therefore, provide a benefit to both religious and non-religious individuals. As the Supreme Court made clear, the government may, and sometimes must, accommodate religious practice and doing so does not violate the Establishment Clause. *Hobbie v. Unemployment Appeal Comm'n,* 480 U.S. 136, 144–45, 107 S.Ct. 1046, 94 L.Ed.2d 190 (1987).

### 2. Neither Advancing Nor Inhibiting Religion

Defendants claim that through RLUIPA Congress is advancing religion by providing religious activity with special protection. For a law to violate the second prong of *Lemon,* the *"government itself* [must have] advanced religion through its own activities and influence." *Amos,* 483 U.S. at 337, 107 S.Ct. 2862 (emphasis in original). In fact, in enacting RLUIPA,

Congress did nothing to advance or inhibit religion. RLUIPA allows religious groups to practice. their religious beliefs without unnecessary governmental regulation.[6] This is as near complete neutrality with respect to religion as is likely possible. *Epperson v. Arkansas,* 393 U.S. 97, 103–04, 89 S.Ct. 266, 21 L.Ed.2d 228 (1968) ("Government in our democracy, state and national, must be neutral in matters of religious theory, doctrine, and practice. It may not be hostile to any religion or to the advocacy of no religion ... The First Amendment mandates governmental neutrality between religion and religion, and between religion and nonreligion.").

The *Amos* Court further determined that when the government acts to lift burdens on the exercise of religion, it does not similarly have to benefit secular activity. *Amos,* 483 U.S. at 338, 107 S.Ct. 2862. Therefore, it does not follow, as Defendants argue, that merely because Congress has acted to provide religious activity with special protection and has not done the same for secular activity, that Congress has advanced religion. Congress took no affirmative action to promote religion. Rather, Congress forbade the implementation of substantial burdens on religion. This neither advances nor inhibits religion, but rather allows people to practice religion as they choose.

Defendants assert that any reasonable observer can see Congress intended to advance religion through RLUIPA. In fact, this Court finds that a reasonable observer would find RLUIPA expresses governmental endorsement of the free exercise of religion and not of religion in general. *Hawley v. City of Cleveland,* 24 F.3d 814, 822 (6th Cir.1994) (stating a reasonable person would not consider a chapel at the airport evidence of the city's endorsement of religion) (citing *County of Allegheny v.*

*ACLU Greater Pittsburgh Chapter,* 492 U.S. 573, 109 S.Ct. 3086, 106 L.Ed.2d 472 (1989) and *Americans United for Separation of Church and State v. City of Grand Rapids,* 980 F.2d 1538, 1544 (6th Cir. 1992)). One cannot read RLUIPA as an endorsement of religion in general. The only reasonable way to read RLUIPA is as an affirmation of an individual's ability to choose to practice religion. This sort of general accommodation of all religion has been upheld by the Supreme Court in the past. *Bd. of Educ. of Kiryas Joel Village Sch. Dist. v. Grumet,* 512 U.S. 687, 705–06, 114 S.Ct. 2481, 129 L.Ed.2d 546 (1994).

### 3. Excessive Government Entanglement with Religion

Under the third prong of *Lemon,* Defendants assert that RLUIPA fosters excessive government entanglement with religion. Defendants argue that MDOC will now have to monitor all religious activity to determine if the prison is placing a substantial burden on religion. Also, MDOC will have to spend more time defending itself in lawsuits arising under RLUIPA, further entangling itself with religion. This level of involvement by the federal courts, according to Defendants, is contrary to Supreme Court decisions holding that federal courts should avoid excessive entanglement with the internal operations of prisons. *Jones v. North Carolina Prisoners' Labor Union, Inc.,* 433 U.S. 119, 97 S.Ct. 2532, 53 L.Ed.2d 629 (1977).

■ It is the belief of this Court that RLUIPA "effectuates a more complete separation of the two [church and state] and avoids the kind of intrusive inquiry into religious belief" about which Defendants' purport to be so concerned. *Amos,* 483 U.S. at 339, 107 S.Ct. 2862. RLUIPA further removes government involvement

---

**6.** RLUIPA forbids government imposition of "a substantial burden on the religious exer-

cise of a person residing in or confined to an institution...." 42 U.S.C. § 2000cc–1(a).

with religion by prohibiting governmental imposition of substantial burdens on religion. While Defendants have to decide if a regulation affecting religious practice will constitute a forbidden substantial burden, this does not constitute government entanglement. According to the Ninth Circuit Court of Appeals, if that were the case, IRS deductions and exemptions, Selective Service deferment, and Congressional and military chaplaincies would be forbidden. *Mockaitis v. Harcleroad,* 104 F.3d 1522, 1530 (9th Cir.1997). Government does not have to treat religion like an untouchable pariah in order to avoid state entanglement with religion. *Zorach v. Clauson,* 343 U.S. 306, 313–14, 72 S.Ct. 679, 96 L.Ed. 954 (1952). Government, however, cannot be so involved with religion as to endorse any particular practice or belief. *Id.* Here, prison officials are only being asked to avoid substantially burdening religious activity. To comply, prison officials do not have to inquire into religious beliefs or analyze religious practice. They only need to review the effect of their regulations on religious activity. Government officials are in no way involved in endorsing any specific belief or practice or even religion in general and are therefore not unconstitutionally entangled with religion.

## B. Congress' Enactment of RLUIPA Pursuant to § 5 of the Fourteenth Amendment

The Court will briefly address this issue as Defendants concede that there is no indication Congress passed the pertinent sections of RLUIPA pursuant to § 5 of the Fourteenth Amendment. Congress enacted 42 U.S.C. § 2000cc–1 under the alternative powers found in the Spending Clause and Commerce Clause. Therefore, if Congress appropriately enacted RLUIPA under the Commerce Clause or Spending Clause, whether Congress also had the authority to pass RLUIPA under § 5 of the Fourteenth Amendment is irrelevant. *Mayweathers v. Terhune,* 2001 WL 804140, *8 (E.D.Cal. July 2, 2001); *Anisimov v. Lake,* 982 F.Supp. 531, 540 (N.D.Ill. 1997).

## C. Congress' Power to Enact RLUIPA Pursuant to the Commerce Clause

Defendants argue that Congress enacted RLUIPA in violation of the Commerce Clause in three ways. First, Congress exceeded its authority by regulating non-commercial activity; second, RLUIPA is a congressional attempt to regulate purely intrastate activity; and third, RLUIPA improperly imposes the burden of proof on the government.

■ Under the Commerce Clause, Congress has the power "to regulate Commerce with foreign Nations, and among the several States, and with Indian Tribes." U.S. Const. Art. I, § 8. The power includes "the power to regulate; that is to prescribe the rule by which commerce is to be governed. This power, like all others vested in Congress, is complete in itself, may be exercised to its utmost extent, and acknowledges no limitations, other than are prescribed in the constitution." *United States v. Lopez,* 514 U.S. 549, 553, 115 S.Ct. 1624, 131 L.Ed.2d 626 (1995). After the Supreme Court's decision in *Lopez,* it is clear that Congress has the power to regulate three areas of commerce. They include: (1) regulating the use of the channels of interstate commerce; (2) regulating to protect the instrumentalities or persons or things involved in interstate commerce, even if the threat being regulated against arises from intrastate activity; and (3) regulating activities with a substantial relation to interstate commerce. *Lopez,* 514 U.S. at 558–59, 115 S.Ct. 1624.

### 1. Congressional Regulation of Non–Commercial Activity

■ The relevant language of RLUIPA limits the applicability of RLUIPA to when a regulation directly affects interstate commerce, the third area of permissible Congressional regulation.[7] Under *Lopez* a congressional regulation may demonstrate an effect on interstate commerce in one of two ways. The first is when the statute includes a jurisdictional element that requires a case-by-case analysis of whether there is an effect on interstate commerce. The second covers regulations of expressly commercial activity. *Lopez*, 514 U.S. at 561, 115 S.Ct. 1624 (striking firearms possession law because it neither dealt with economic activity nor included a jurisdictional element). RLUIPA falls within the first category because, before it can be applied, it requires a case-by-case analysis of whether the regulation placing a substantial burden on religious activity affects interstate commerce. Statutes that contain a jurisdictional element that "would ensure, through case-by-case inquiry, that the [substantial burden on religious exercise] affects interstate commerce" satisfy the requirements of the Commerce Clause. *Lopez*, 514 U.S. at 561–62, 115 S.Ct. 1624. The Sixth Circuit has repeatedly recognized the constitutionality of congressional regulations under the Commerce Clause because they contain a jurisdictional element. *See, e.g., United States v. Chesney*, 86 F.3d 564, 568–70 (6th Cir.1996); *United States v. Turner*, 77 F.3d 887, 889 (6th Cir.1996); *United States v. Sherlin*, 67 F.3d 1208, 1213–14 (6th Cir.1995). Therefore, Defendants' argument that RLUIPA must fail because it does not regulate commercial activity is misplaced. RLUIPA is saved by its jurisdictional requirement which establishes the requisite nexus to interstate commerce to satisfy the Commerce Clause. *United States v. Morrison*, 529 U.S. 598, 613, 120 S.Ct. 1740, 146 L.Ed.2d 658 (2000).

Furthermore, the Supreme Court has yet to limit Congressional regulation under the Commerce Clause to purely commercial activity. The Supreme Court has stated activity regulated pursuant to the Commerce Clause must have a commercial nexus and affect interstate commerce. *Morrison*, 529 U.S. at 611, 120 S.Ct. 1740. Significantly, one week after deciding *Morrison*, the Supreme Court found a commercial nexus in congressional regulation of arson, a clearly non-commercial activity, through the statute's jurisdictional requirement. *Jones v. United States*, 529 U.S. 848, 120 S.Ct. 1904, 146 L.Ed.2d 902 (2000); *see also United States v. Faasse*, 265 F.3d 475, 480 (6th Cir.2001) (declining to "fashion a narrow and technical definition of commerce that turns on whether the transaction at issue involves trade"). While it is true that RLUIPA addresses non-commercial religious activity, this fact does not make the statute *per se* unconstitutional. *Lopez* and its progeny require a "substantial relation to interstate commerce," which RLUIPA provides through its jurisdictional element. *Morrison*, 529 U.S. at 613, 120 S.Ct. 1740.

### 2. Free Exercise of Religion is Interstate Activity

■ Defendants also claim that RLUIPA regulates purely intrastate activity and therefore is beyond the scope of Congress' Commerce Clause power. Many courts, including *Lopez*, have upheld congressional regulation of intrastate activity, but that point need not even be addressed here, because RLUIPA does not involve intra-

---

7. "[T]he substantial burden affects, or removal of the substantial burden would affect, commerce with foreign nations, among the several States, or with Indian tribes." RLUIPA, 42 U.S.C. § 2000cc–1(b)(2).

state activity. *See, e.g., United States v. DiSanto*, 86 F.3d 1238, 1245 (1st Cir.1996) ("whatever *Lopez* ' reach, it certainly did not purport to overrule cases upholding application of the commerce clause power to wholly intrastate activities satisfying the requisite nexus to interstate commerce' "). RLUIPA covers regulation of the free exercise of religion, an objectively interstate activity. This Court finds that the free exercise of religion affects interstate commerce in a multitude of ways including: use of the airwaves to advertise various religions and to seek charitable donations for domestic and international concerns; use of the interstate highway system for traveling choirs and missionary groups; and, use of the mail system to buy and sell ceremonial items and religious literature. *See, e.g., United States v. Corum*, 2002 WL 1285078, *3 (D.Minn. June 5, 2002) ("It is well established that religious organizations can and do engage in and affect interstate commerce.") (citing *Camps Newfound/Owatonna v. Town of Harrison*, 520 U.S. 564, 117 S.Ct. 1590, 137 L.Ed.2d 852 (1997)). While this Court finds that RLUIPA strives to regulate activity involving interstate commerce, and is therefore a permissible exercise of Congress' commerce clause power, it must still be shown at trial that in the particular case at issue, there is a connection to interstate commerce.

Finally, whether or not intrastate activity is at issue is made more irrelevant by the fact that the requisite connection to interstate commerce is established by RLUIPA's requirement that the challenged regulations have an affect on interstate commerce, for RLUIPA's protections to apply.[8]

### 3. RLUIPA Does Not Improperly Shift the Burden of Establishing Jurisdiction

Defendants argue that 42 U.S.C. § 2000cc–2(g) places the burden of establishing jurisdiction on the government instead of on the complaining party. Defendants misread this section of RLUIPA. This section provides Defendants with an additional defense *after* the complaining party has met its burden. The complaining party must first demonstrate that the substantial burden on the exercise of religion, or the removal of such a burden, affects interstate commerce. If that is plaintiff's only jurisdictional basis allowing application of RLUIPA, then RLUIPA does not apply if defendants "demonstrate[ ] that all substantial burdens from, similar religious exercise throughout the Nation would not lead in the aggregate to a substantial effect on commerce with foreign nations, among the several States, or with Indian tribes." 42 U.S.C. § 2000cc–2(g). Rather than shifting any burden to

---

**8.** As the District Court for the Eastern District of Pennsylvania wrote, RLUIPA adheres to *Wickard v. Filburn*, 317 U.S. 111, 63 S.Ct. 82, 87 L.Ed. 122 (1942) aggregate approach to interstate commerce. *Freedom Baptist Church of Delaware v. Township of Middletown*, 204 F.Supp.2d 857, 867 (E.D.Pa.2002). The "Limitation" of RLUIPA provides:

If the only jurisdictional basis for applying a provision of this Act is a claim that a substantial burden by a government on religious exercise affects, or that removal of that substantial burden would affect, commerce with foreign nations, among the several States, or with Indian tribes, the pro-

vision shall not apply if the government demonstrates that all substantial burdens on, or the removal of all substantial burdens from, similar religious exercise throughout the Nation would not lead in the aggregate to a substantial effect on commerce with foreign nations, among the several States, or within Indian tribes.

42 U.S.C. § 2000cc–2(g). Therefore, even if RLUIPA is viewed as regulating intrastate activity of prison management, it only applies if the *Wickard* test is satisfied. That is, the intrastate activity must have an aggregate affect on interstate activity.

the government, this section of RLUIPA further protects governments trying to effectively manage their institutions.

The Court notes that Congress' omission of the word substantial in its prohibition of regulations that *affect*, rather than *substantially affect*, interstate commerce is not problematic. The Supreme Court determined that when Congress uses the unqualified phrase "affect on commerce," it is invoking its full authority under the Commerce Clause. *Jones*, 529 U.S. at 854, 120 S.Ct. 1904. The section of *Lopez* that discusses triggering language which would prompt protection of a particular statute upon a showing of an effect on interstate commerce did not include the qualifier *substantial*. *Lopez*, 514 U.S. at 561, 115 S.Ct. 1624. Therefore, this Court finds that omission of the word substantial has no impact on the constitutionality of RLUIPA.

### D. Congress' Power to Enact RLUIPA Pursuant to the Spending Clause

Defendants contend that Congress cannot impose the restrictions of RLUIPA pursuant to the Spending Clause because the federal funding received by MDOC is not specifically related to religious activity or practice.[9] Rather, the funds are targeted for education grants, substance abuse programs, and to incarcerate youthful offenders. Therefore, according to Defendants, Congress exceeded its authority under the Spending Clause in enacting RLUIPA because the purpose of the money is different from the intention of the conditions on its receipt.

RLUIPA contains two limitations on its application. One was discussed earlier and involves regulations that affect interstate commerce. The second states

RLUIPA applies where "the substantial burden [on religious activity] is imposed in a program or activity that receives Federal financial assistance." 42 U.S.C. § 2000cc–1(b)(1). The Constitution permits Congress to "lay and collect Taxes, Duties, Imposts, and Excises to pay the Debts and provide for the Common Defense and general Welfare of the United States." U.S. Const., Art. I, § 8, cl. 1. The Supreme Court has upheld statutes in which Congress attached strings to receipt of federal grants pursuant to the Spending Clause. *South Dakota v. Dole*, 483 U.S. 203, 206, 107 S.Ct. 2793, 97 L.Ed.2d 171 (1987). In doing so, the Supreme Court recognized four limitations to Congress' power under the Spending Clause. They include: (1) the exercise of the spending power must be in pursuit of the general welfare; (2) conditions on the receipt of federal funds must be unambiguous; (3) conditions must be related to the federal interest in a particular national project or program; and (4) other constitutional provisions may bar the conditional grant of federal funds. *Dole*, 483 U.S. at 207–08, 107 S.Ct. 2793 (permitting federal law conditioning receipt of highway construction funds on states raising minimum drinking age). Defendants argue RLUIPA fails the third and fourth prongs.

### 1. Conditions in RLUIPA are Related to Federal Interest in Free Exercise of Religion and Prisoner Rehabilitation

Defendants assert that because the federal funds received are designated for use in projects with no relation to religion, the conditions placed on receipt of the money, which have to do with religious practice, are improper, because they are not related

---

9. Defendants concede that MDOC received $28,032,400 in federal funding for the fiscal year 2002.

to the same national project or program that the money funds. However, the conditions need only be relevant to the federal interest in the overall objectives of the project. *Ivanhoe Irrigation Dist. v. McCracken,* 357 U.S. 275, 295, 78 S.Ct. 1174, 2 L.Ed.2d 1313 (1958). Therefore, in *Dole,* the Court allowed Congress to condition receipt of federal highway funds on the states' adoption of a minimum drinking age of twenty-one. As the Court held, Congress has an interest in safe highways and the condition of implementing a minimum drinking age was related to that interest. *Dole,* 483 U.S. at 209, 107 S.Ct. 2793 ("Congress conditioned the receipt of federal funds in a way reasonably calculated to address this particular impediment to a purpose for which the funds are expended.").

■ With respect to RLUIPA, the conditions imposed by Congress relate to Congress' interest in promoting the free exercise of religion and the rehabilitation of prisoners. It appears to this Court that if Congress can restrict highway funds, used to build and repair roads, with a condition mandating a minimum drinking age, Congress can certainly restrict prison funds, used to support rehabilitation and education programs, with a condition mandating accommodation of religious activity. *See, e.g., Lau v. Nichols,* 414 U.S. 563, 94 S.Ct. 786, 39 L.Ed.2d 1 (1974) (finding that Congress could require schools receiving federal funding to provide English language tutoring because of its interest in preventing racial discrimination); *United States v. Louisiana,* 692 F.Supp. 642, 652 (E.D.La.1988) (upholding prohibition on racial discrimination by state public higher education system receiving federal public education funds). Certainly the practice of religion is more closely linked to rehabilitation and education of prisoners than a minimum drinking age is to building roads. *Michigan Dep't of State v. United States,* 166 F.Supp.2d 1228 (W.D.Mich.2001)

(recognizing that a "tight relationship" between a program and the federal interest is not required).

Defendants offer an additional claim that RLUIPA fails under the Spending Clause because Congress failed to provide guidance as to how agencies should obey the statute. Defendants' concern addresses what they consider the ambiguity presented by the term "least restrictive means." "Least restrictive means" indicates the standard under RLUIPA for permissible regulation of religious activity if there is a compelling government interest. 42 U.S.C. § 2000cc–1(a).

■ It is not difficult to determine what a government agency in receipt of federal funds must do to comply with RLUIPA. First, RLUIPA clearly applies to "a program or activity that receives Federal financial assistance." Second, as a recipient of federal funds, a government may not impose a substantial burden on the free exercise of religion by persons residing or confined within an institution. Third, if there is a compelling governmental interest, a government may impose otherwise impermissible regulations as long as they are the least restrictive means for furthering that compelling governmental interest.

Defendants rely on the Supreme Court's decision in *Pennhurst State Sch. & Hosp. v. Halderman,* 451 U.S. 1, 17, 101 S.Ct. 1531, 67 L.Ed.2d 694 (1981), where the Court stated that if Congress wants to impose conditions on state spending, it must do so unambiguously. In that decision, the Supreme Court did not strike the statute because it was a vague, non-specific exercise of congressional power, but rather because Congress failed to make clear that the condition of receipt of the funds was the states' reciprocal obligation to provide "appropriate treatment" in "the least restrictive setting." *Pennhurst,* 451 U.S. at 17–18, 101 S.Ct. 1531. Use of the

term "least restrictive setting" is not what troubled the Supreme Court. Rather, it was the ambiguity over whether receipt of the federal funds was subject to satisfaction of a condition. *Id.* at 25, 101 S.Ct. 1531. It is abundantly clear what is expected of governments in receipt of federal funds pursuant to RLUIPA. Therefore, the concerns raised by the Supreme Court in *Pennhurst* are not applicable here.

Additionally, the Court notes, states are more than familiar with the "least restrictive means" standard. *See e.g., Thomas v. Review Bd. of Indiana Employment Sec.,* 450 U.S. 707, 718, 101 S.Ct. 1425, 67 L.Ed.2d 624 (1981). Compliance with this standard should not present prison officials with any difficulty.

### E. RLUIPA Violates the Tenth Amendment

■ Defendants argue that RLUIPA violates the Tenth Amendment because Congress is legislating in an area reserved to the states. The Tenth Amendment states "the powers not delegated to the United States by the Constitution, nor prohibited by it to the States, are reserved to the States respectively, or to the people." U.S. Const. Amend. X. As discussed above, Congress is not acting outside the scope of its constitutional authority and so is not violating the Tenth Amendment. *United States v. Darby,* 312 U.S. 100, 124, 61 S.Ct. 451, 85 L.Ed. 609 (1941). "Congress having acted within the scope of the powers 'delegated to the United States by the Constitution,' it has not exceeded the limits of the Tenth Amendment despite the concurrent effects of its legislation upon a matter otherwise within the control of the State." *Sperry v. State of Florida,* 373 U.S. 379, 403, 83 S.Ct. 1322, 10 L.Ed.2d 428 (1963); *United States v. Baker,* 807 F.2d 1315, 1325 (6th Cir.1986).

Defendants assert that RLUIPA somehow offends the implicit sovereign immunity states claim in our unique federal system by its overly intrusive federal regulation of states. Furthermore, Defendants argue that RLUIPA threatens to disrupt prison operations by subjecting them to strict scrutiny and greater costs due to litigation and resulting operational changes. According to Defendants, these effects implicate *Alden v. Maine,* 527 U.S. 706, 119 S.Ct. 2240, 144 L.Ed.2d 636 (1999), and *Nat'l League of Cities v. Usery,* 426 U.S. 833, 96 S.Ct. 2465, 49 L.Ed.2d 245 (1976), by interfering with states' management of itself. However, *Alden* cannot be extended to grant states complete immunity from suit. *Alden* merely protected states from suits in their own courts. *Garcia v. San Antonio Metro. Transit Auth.,* 469 U.S. 528, 537, 105 S.Ct. 1005, 83 L.Ed.2d 1016 (1985).

In addition, Defendants cannot mean to argue that the federal government can never interfere with states' management of themselves. *See New York v. United States,* 505 U.S. 144, 112 S.Ct. 2408, 120 L.Ed.2d 120 (1992). As discussed above with respect to Congress' Spending Clause power, the federal government can impose conditions on receipt of funds that regulate state activity. *See supra,* Part III.D.1. RLUIPA does not regulate how MDOC manages its prison population, but rather prohibits certain government activity i.e. placement of substantial burdens on religious activity. Therefore, RLUIPA does not run afoul of the Tenth Amendment. *See, e.g., Reno v. Condon,* 528 U.S. 141, 120 S.Ct. 666, 145 L.Ed.2d 587 (2000).

Finally, Defendants assert *Garcia* does not control because that decision involved legislation that affected state and private conduct, while RLUIPA only regulates states. Also, Defendants maintain, RLUIPA goes further because it regulates how states regulate their citizens. Other circuits have rejected the distinction Defen-

dants have attempted to draw between the conduct addressed in *Garcia* and that addressed by RLUIPA, namely state and private conduct versus state conduct alone. *Oklahoma v. United States*, 161 F.3d 1266, 1270–71 (10th Cir.1998) (clarifying that courts refer to laws of "general applicability" as code for laws that do not unconstitutionally commandeer state legislative or executive processes). As the Tenth Circuit stated, the Supreme Court has never held that Congress cannot regulate states alone as is done with RLUIPA. *Id.* at 1270 (citing *South Carolina v. Baker*, 485 U.S. 505, 507–15, 108 S.Ct. 1355, 99 L.Ed.2d 592 (1988)). The key is that the regulation not interfere with sovereign state functions. *Id.* As discussed above, RLUIPA merely regulates states' activity and gives states the option to comply or forego federal funding. *See id.*

## IV. Conclusion

Therefore, an Order will issue denying Defendants' Partial Motion for Summary Judgment and adopting Magistrate Judge Greeley's Report and Recommendation.

### *ORDER*

In accordance with the Opinion issued this date,

**IT IS HEREBY ORDERED** that Defendants' Objections to Magistrate Judge Greeley's Report and Recommendation (Dkt. No. 147) are **DENIED.**

**IT IS FURTHER ORDERED** that Defendants' Motion for Partial Summary Judgment (Dkt. No. 13, Case. No. 1:01 CV 515) is **DENIED.**

**IT IS FURTHER ORDERED** that Magistrate Judge Timothy P. Greeley's Report and Recommendation (Dkt. No. 143) is **ADOPTED.**