Waahid MUSLIM, a/k/a David
Richardson, Plaintiff,

v.

Thomas FRAME, et al., Defendants.

Civ. A. No. 93–0554.

United States District Court,
E.D. Pennsylvania.

Aug. 23, 1995.

Mark B. Schoeller, Duane, Morris & Heckscher, Philadelphia, PA, for plaintiff Waahid Muslim aka David Dewees Richardson.

Waahid Muslim, Coatesville, PA, pro se.

Deborah L. Doyle, Margolis, Edelstein, Scherlis, Sarowitz & Kraemer, Joseph Goldberg, Philadelphia, PA, C. Robert Elicker, Jr., Chester County Solicitor, West Chester, PA, for defendants Thomas G. Frame, Warden, Edward McFadden, Director of Treatment, Dale Guyer, Correctional Officer.

## OPINION

LOUIS H. POLLAK, District Judge.

Waahid Muslim filed this lawsuit under 42 U.S.C. § 1983 to challenge the no-hats rule of Chester County Prison, under which inmates cannot wear hats in the prison common areas. Plaintiff professes to be a practicing Muslim and has asserted a desire to wear a kufi, the Muslim prayer cap, throughout the prison. In his complaint, plaintiff

argued that the no-hats rule violates his rights under the Free Exercise Clause of the First Amendment, as well as under the Due Process and Equal Protection Clauses of the Fourteenth Amendments. Defendants, prison officials of the Chester County Prison, claim that the no-hats policy is needed to ensure prison security. On June 30, 1995, this court granted summary judgment to the defendants on the due process and equal protection claims but denied summary judgment to both sides on the free exercise claim. The court also dismissed plaintiff's claim for injunctive relief as moot because he was no longer incarcerated in the Chester County Prison.

In the June 30 memorandum, the court found that the Religious Freedom Restoration Act (RFRA), 42 U.S.C. § 2000bb-1—the law passed by Congress to reestablish the "compelling interest" test that had guided the Supreme Court's free exercise jurisprudence prior to *Employment Division v. Smith*, 494 U.S. 872, 110 S.Ct. 1595, 108 L.Ed.2d 876 (1990)—provides the proper standard for addressing this claim. RFRA provides:

> Government may substantially burden a person's exercise of religion only if it demonstrates that application of the burden to the person—
>
> (1) is in furtherance of a compelling governmental interest; and
>
> (2) is the least restrictive means of furthering that compelling governmental interest.

42 U.S.C. § 2000bb-1(b). Under RFRA, a plaintiff must first establish that the government has substantially burdened the free exercise of religion; if the plaintiff satisfies this threshold, the government must establish that its conduct is the least restrictive means of serving a compelling governmental interest. In this court's June 30 memorandum, I concluded that genuine issues of material fact remained as to both plaintiff's and defendants' burdens under RFRA. Specifically, the issues that remain for trial are whether the plaintiff is motivated by a sincerely held religious belief and whether the no-hats rule is the least restrictive means of

furthering the government's compelling interest in prison safety.

Defendants have asked the court to reconsider the denial of summary judgment. Defendants make three arguments: that RFRA does not apply to this case; that, even if RFRA does apply, the court misapplied it; and that the defendants are entitled to qualified immunity. I will address these arguments in turn.

I. Whether RFRA Applies

■ Defendants argue that RFRA should not apply in this case because the plaintiff did not frame his complaint or his response to the summary judgment motion in terms of RFRA. In support of this argument, defendants cite *Brown–El v. Harris,* 26 F.3d 68 (8th Cir.1994). In that case, the Eighth Circuit apparently concluded that the pre-RFRA standard should govern. The court stated:

> We recognize that Congress, in passing the Religious Freedom Restoration Act of 1993 has created a new standard of review for claims that governmental action restricts the free exercise of religion. Although the Act applies retroactively, we need not consider the new standard because Brown–El failed to raise or otherwise bring his claim under the Act, and in any event, we conclude the [defendant's] policy does not restrict Brown–El's religious freedom in the first place.

*Id.* at 69 (citations omitted). I do not read this case as standing for the proposition that RFRA applies only when raised by the parties. The remainder of the opinion addresses whether the governmental conduct burdened the plaintiff's free exercise; thus, it appears that the central basis for the decision was that the plaintiff had not established a burden on his free exercise. To the extent that *Brown–El* suggests that a court cannot apply RFRA without being asked, I disagree. RFRA is the law regardless of whether parties mention it. RFRA itself states that its purposes are "to restore the compelling interest test" and to "guarantee its application in *all* cases where free exercise of religion is substantially burdened." 42 U.S.C. § 2000bb(b)(1) (emphasis added). Moreover,

applying RFRA in this case does not unfairly prejudice defendants, who presented oral argument on the applicability of RFRA to Magistrate Judge Thomas J. Rueter, who then wrote his Report and Recommendation addressing the plaintiff's free exercise claim in terms of RFRA.

## II. Whether the Court Misapplied RFRA

Defendants next argue that, even if RFRA applies, plaintiff has come forward with no evidence to satisfy his burden under RFRA while defendants have satisfied their burden as a matter of law. Specifically, defendants argue that plaintiff has not shown that the headgear restrictions substantially burden his free exercise of religion. Moreover, it is argued, defendants have established that the prison's restrictions constitute the least restrictive means of furthering the government's interest in creating safe prisons. These arguments merely rehash the arguments defendants presented in support of their motion for summary judgment, and I addressed these arguments in my June 30 memorandum. No purpose would be served by an extensive recanvassing of matters already discussed at some length. As the Third Circuit has stated, "The purpose of a motion for reconsideration is to correct manifest errors of law or fact or to present newly discovered evidence." *Harsco Corp. v. Zlotnicki,* 779 F.2d 906, 909 (3d Cir.1985).

■ I note, however, that defendants apparently misunderstand what I have held to be the plaintiff's burden under RFRA. Defendants argue that there is no substantial burden on plaintiff's free exercise because "other provisions were made for the practice of plaintiff's religion." Defendants' Memorandum at 5. This presumably is a reference to the assertions elaborated in the defendants' pretrial memorandum that the prison provides Muslim inmates the opportunity to attend religious ceremonies and prayer meetings, that the prison contracts with an imam to lead these ceremonies, and that the prison provides meals that satisfy Islamic dietary restrictions, including special meal schedules during the festival of Ramadan. Defendants' Pretrial Memorandum at 3. Under the defendant's reasoning, a burden on free exercise would not be substantial unless it interfered with a person's ability to practice religion *generally.* The term "free exercise of religion," however, refers to particular practices of religion, not the practice of religion in general. Just as the government cannot justify restricting some forms of speech merely by pointing to other opportunities a person has to speak, so the government cannot limit particular exercises of religion by pointing to other religious practices that remain available. It would be curious to find that RFRA barred challenges to governmental restrictions on religion as long as the plaintiff could practice, say, two-thirds of his religion.

Supreme Court cases prior to *Smith*—cases applying the strict scrutiny test restored by RFRA—analyzed specific religious practices burdened by governmental action and found no occasion to inquire whether, putting the burdened practice to one side, the complainant was otherwise unimpeded in the practice of his or her religion. Thus, in *Sherbert v. Verner,* 374 U.S. 398, 83 S.Ct. 1790, 10 L.Ed.2d 965 (1963), the Court declared unconstitutional state regulations which forced the appellant to choose between observing the Sabbath and receiving unemployment benefits. The Court did not ask whether, despite the restriction on Sabbath observation, the appellant could nonetheless practice *other* aspects of her religion. Similarly, in *Wisconsin v. Yoder,* 406 U.S. 205, 92 S.Ct. 1526, 32 L.Ed.2d 15 (1972), in which the Court ruled that Amish parents did not need to follow Wisconsin's compulsory secondary education law, the Court did not ask whether the state allowed the Amish to practice their religion *generally,* the particular restriction at issue notwithstanding. RFRA specifically instructs courts to look to *Sherbert* and *Yoder* for guidance. *See* 42 U.S.C. § 2000bb(b)(1). Consequently, the government cannot defend its decision to prevent the plaintiff from wearing a kufi by pointing to other Islamic practices available to him.

■ Defendants further argue that plaintiff cannot show a substantial burden on his free exercise rights because he has not shown that wearing a kufi at all times is required by Islam. In my June 30 memorandum, however, I concluded that a plaintiff

satisfies his burden under RFRA by demonstrating that (1) the practice he wishes to engage in is motivated by a sincerely held religious belief, and (2) governmental conduct has substantially burdened his ability to engage in this practice. As I discussed at length in my earlier memorandum, it is unnecessary under RFRA for a plaintiff to demonstrate that the religious practice at issue is *mandated* by his religion. To be sure, a number of other courts have reached a different conclusion. *See Werner v. McCotten,* 49 F.3d 1476 (10th Cir.1995); *Bryant v. Gomez,* 46 F.3d 948 (9th Cir.1994); *Daytona Rescue Mission v. City of Daytona Beach,* 885 F.Supp. 1554 (M.D.Fla.1995); *Rust v. Clarke,* 883 F.Supp. 1293 (D.Neb. 1995); *Alameen v. Coughlin,* 892 F.Supp. 440 (E.D.N.Y.1995); *Weir v. Nix,* 890 F.Supp. 769 (S.D.Iowa 1995); *Loden v. Peters,* 1995 WL 89951 (N.D.Ill. Mar. 1, 1995); *Davidson v. Davis,* 1995 WL 60732 (S.D.N.Y. Feb. 14, 1995). These courts have held that a burden on religion is not substantial unless the religious practice or belief at issue is mandated by the plaintiff's religion.[1] This conclusion, however, conflicts with the text of RFRA, which protects the "free exercise of religion." As discussed above, this phrase refers to particular practices which are religious in nature. Such practices are not limited to those deemed to be compulsory by religious doctrine. RFRA limits the government's ability to place substantial burdens on religious practices; it does not allow the government to burden a religious practice as long as the practice itself is not substantial.

This interpretation of RFRA's text comports with RFRA's legislative history, which specifically rejects limiting its application to practices mandated by religion. Representative Stephen Solarz, the original sponsor of RFRA, stated:

> Were Congress to go beyond the phrasing chosen by the drafters of the First Amendment by specifically confining the scope of this legislation to those practices compelled or proscribed by a sincerely held religious belief in all circumstances, we would run the risk of excluding practices which are generally believed to be exercises of religion worthy of protection. For example, many religions do not require their adherents to pray at specific times of day, yet most members of Congress would consider prayer to be an unmistakable exercise of religion.
>
> To say that the "exercise of religion" might include acts not necessarily compelled by a sincerely held religious belief is not to say that any act merely consistent with, or not proscribed by one's religion would be an exercise of religion. As I pointed out in my testimony, it would not be reasonable to argue, for example, that a person whose religion did not proscribe the possession of a machine gun had a free exercise right to own one notwithstanding applicable federal laws.

Hearings on H.R. 2797 Before the House Judiciary Comm., 102d Cong., 2d Sess. 128–30 (May 13, 1992). Representative Solarz quoted a letter written by Professors Michael McConnell, Douglas Laycock, and Edward McGlynn Gaffney to further explain why he chose not to limit RFRA to practices compelled by religion:

> It is difficult to capture the idea of the dictates of conscience in statutory language because different theological traditions conceptualize the force of [God's] moral order in different ways. Some treat it as a binding moral law; others view it as an expression of [God's] will, which believers freely conform to out of love and devotion to [God].... it would be a mistake to tighten the language of the Act by confining it to conduct "compelled by" religious belief.

---

1. In *Bryant,* the Ninth Circuit stated that in order to demonstrate a substantial burden, a RFRA plaintiff:

   > has the obligation to prove that a governmental [action] burdens the adherent's practice of his or her religion ... by preventing him or her from engaging in conduct or having a religious experience which the faith mandates.

   > This interference must be more than an inconvenience; the burden must be substantial and an interference with a tenet or belief that is central to religious doctrine.

   46 F.3d at 949 (quoting *Graham v. C.I.R.,* 822 F.2d 844, 850–51 (9th Cir.1987), *aff'd sub nom. Hernandez v. Commissioner,* 490 U.S. 680, 109 S.Ct. 2136, 104 L.Ed.2d 766 (1988)).

*Id.* at 129 (quoting letter written by Professors McConnell, Laycock, and Gaffney). *See also id.* at 322 (testimony of Professor Gaffney).

Although the version of RFRA introduced by Representative Solarz did not include the word "substantially," the addition of this word does not limit RFRA's applicability to compelled practices. The word "substantially" was added to RFRA on the floor of the Senate by an amendment introduced by Senators Kennedy and Hatch, an amendment they termed "technical" only. Senator Hatch explained the purpose of the amendment:

> [T]he technical amendment is intended to clarify [that] the compelling interest required by [RFRA] applies only where there is a substantial burden placed on the individual free exercise of religion. This is consistent with the case law developed by the Court prior to the *Smith* decision ... It does not require the Government to justify every action that has some effect on religious exercise. Only action that places a substantial burden on the exercise of religion must meet the compelling State interest set forth in [RFRA].

139 Cong.Rec. S14352 (daily ed. Oct. 26, 1993). Similarly, Senator Kennedy described the amendment's purpose as a clarification that RFRA did not require a compelling justification for governmental conduct that has an "incidental effect" on religious practices. *Id.* Nowhere was it suggested that the introduction of the word "substantially" was intended to limit RFRA to religiously-compelled practices. Rather, the sponsors of the floor amendment explained that limiting RFRA's application to substantial burdens was intended to excuse the government from justifying conduct that did not significantly burden covered practices. Thus, the government does not need to justify conduct that merely makes a particular religious practice inconvenient. Only when the inconvenience reaches the level of a "substantial burden" must the government satisfy the compelling interest/least restrictive means test imposed by RFRA.

Supreme Court case law before *Smith*, to which RFRA specifically directs courts to look for guidance, 42 U.S.C. § 2000bb(a)(5), did not present a single formulation as to the types of practices covered by the Free Exercise Clause. Some cases characterize the religious practice at issue as mandated by religious beliefs. *See Goldman v. Weinberger*, 475 U.S. 503, 510, 106 S.Ct. 1310, 1314–15, 89 L.Ed.2d 478 (1986) (describing the wearing of a yarmulke by a rabbi as a practice "required by his religious beliefs"); *United States v. Lee*, 455 U.S. 252, 257, 102 S.Ct. 1051, 1055, 71 L.Ed.2d 127 (1981) (characterizing participation in the social security system as "forbidden by the Amish faith"); *Yoder*, 406 U.S. at 215, 92 S.Ct. at 1533 (describing the desire to live apart from the general population as a "command ... fundamental to the Amish faith" and further stating that free exercise claims must be "rooted in religious beliefs"). Other cases do not describe the practice at issue as religiously compelled. *See Frazee v. Illinois Department of Employment Security*, 489 U.S. 829, 834, 109 S.Ct. 1514, 1517–18, 103 L.Ed.2d 914 (1989) (describing observance of Sabbath as "based on sincerely held religious beliefs"); *Lyng v. Northwest Indian Cemetery Protective Association*, 485 U.S. 439, 451, 108 S.Ct. 1319, 1326, 99 L.Ed.2d 534 (1988) (describing use of certain public lands by Native American tribes as "traditional"); *Hobbie v. Unemployment Appeals Commission of Florida*, 480 U.S. 136, 137, 107 S.Ct. 1046, 1047, 94 L.Ed.2d 190 (1987) (describing observance of a Saturday Sabbath by a Seventh Day Adventist as being based on "sincerely held religious convictions" and as involving "fidelity to religious belief"); *Thomas v. Review Board, Indiana Employment Security Division*, 450 U.S. 707, 715, 101 S.Ct. 1425, 1430–31, 67 L.Ed.2d 624 (1981) (describing the plaintiff's termination of employment for refusal to work on an armaments production line as having been done "for religious reasons" and further stating that "[o]ne can ... imagine an asserted claim so bizarre, so clearly nonreligious in motivation, as not to be entitled to protection under the Free Exercise Clause; but that is not the case here ..."); *Sherbert*, 374 U.S. at 404, 410, 83 S.Ct. at 1794, 1797 (describing observance of a Saturday Sabbath by a Seventh Day Adventist as "following the precepts of her religion" and as involving "religious convictions

respecting the day of rest"). The Court provides no analysis for these differing characterizations. Nor does the particular characterization appear to carry any consequence. Thus, the Court in *Hobbie* and *Frazee* struck down unemployment regulations that conflicted with practices motivated by the appellants' "sincerely held religious beliefs," while the Court in *Goldman* upheld restrictions that conflicted with a practice "required by ... religious beliefs."

Nonetheless, the Court has repeatedly stated that judges should avoid being placed in a position in which they must determine the contours of religious doctrine. Such a determination, the Court found, is beyond the judicial competence. Thus, the majority, the concurrence, and the dissent in *Smith* all agreed that a court lacked competence to determine whether a religious practice is central to a religion. Speaking for the majority, Justice Scalia stated:

> It is no more appropriate for judges to determine the "centrality" of religious beliefs before applying a "compelling interest" test in the free exercise field, than it would be for them to determine the "importance" of ideas before applying the "compelling interest" test in the free speech field. What principle of law or logic can be brought to bear to contradict a believer's assertion that a particular act is "central" to his personal faith? Judging the centrality of differing religious practices is akin to the unacceptable "business of evaluating the relative merits of differing religious claims." *United States v. Lee,* 455 U.S. at 263 n. 2, 102 S.Ct. at 1058 n. 2 (Stevens, J., concurring).

494 U.S. at 887, 110 S.Ct. at 1604. Similarly, in her concurrence Justice O'Connor stated, "I agree with the Court ... [that] '[i]t is not within the judicial ken to question the centrality of particular beliefs or practices to a faith.'" *Id.* at 906, 110 S.Ct. at 1615 (quoting *Hernandez v. Commissioner,* 490 U.S. 680, 699, 109 S.Ct. 2136, 2148, 104 L.Ed.2d 766 (1988)). Finally, in his dissent, Justice Blackmun stated, "I agree with Justice O'Connor that courts should refrain from delving into questions whether, as a matter of religious doctrine, a particular practice is 'central' to the religion." *Id.* at 919, 110 S.Ct. at 1621. The Court thus unanimously rejected a centrality inquiry on the basis of judicial competence. *See also Thomas,* 450 U.S. at 716, 101 S.Ct. at 1431 ("Courts are not arbiters of scriptural interpretation."); *Jones v. Wolf,* 443 U.S. 595, 602–06, 99 S.Ct. 3020, 3024–27, 61 L.Ed.2d 775 (1979); *Presbyterian Church v. Mary Elizabeth Blue Hull Memorial Presbyterian Church,* 393 U.S. 440, 449–50, 89 S.Ct. 601, 606–607, 21 L.Ed.2d 658 (1969). Just as a determination of centrality is beyond the judicial "ken," so would a determination of whether religious practices are compelled by religion necessarily place judges in the untenable position of determining religious doctrine.

### III. Whether the Defendants Are Entitled to Qualified Immunity

■ Defendants' final argument is that summary judgment should be granted because they are entitled to qualified immunity. Plaintiff argues that it would be inappropriate to consider this argument in addressing a motion to reconsider because the defendants did not raise it in their motion for summary judgment. Plaintiff may be correct that a motion to reconsider is not the proper avenue to raise the issue of immunity for the first time. Nonetheless, defendants have not waived this defense. The defense of qualified immunity is available at any stage in the litigation. For instance, in *Alvarado v. Picur,* 859 F.2d 448 (7th Cir.1988), the Seventh Circuit held that the defendant had not waived the immunity defense even though it was raised on the eve of trial. Moreover, the Supreme Court has "repeatedly ... stressed the importance of resolving immunity questions at the earliest possible stage in litigation." *Hunter v. Bryant,* 502 U.S. 224, 227, 112 S.Ct. 534, 536, 116 L.Ed.2d 589 (1991) (listing cases). Because this is the first opportunity the court has had to address the immunity question, I find it appropriate to address it here.

■ Qualified immunity protects governmental officers from damages claims when their alleged conduct "does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald,* 457

U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982). In this case, the conduct at issue occurred between July 7, 1992 and October 18, 1993. RFRA was not enacted until November 16, 1993, and therefore the pre-RFRA reasonableness standard, rather than RFRA's strict scrutiny test, governs the question of whether it was clearly established that the prison's headgear restrictions violated the free exercise clause.[2] Under this standard, reasonable prison officials in defendants' positions would not have believed that such restrictions were unconstitutional. In fact, under the standard then in place, the Third Circuit had upheld prison headgear restrictions against a free exercise challenge. *See St. Claire v. Cuyler,* 634 F.2d 109 (3d Cir.1980). Because it was not then clearly established that such rules violate free exercise, if indeed free exercise is now violated by such rules, the defendants are immune from claims for damages based on the enforcement of these rules.

In the court's June 30 memorandum, I dismissed the plaintiff's claim for injunctive relief as moot. As a result of the conclusion above that the defendants are immune from damages, there is no longer any relief available for plaintiff on this claim. The claim therefore should be dismissed. However, in the plaintiff's pretrial memorandum, plaintiff's counsel indicates that he plans to seek reinstatement of the claim for injunctive relief because Mr. Muslim once again finds himself incarcerated in the Chester County Prison, where the restrictions on hats that give rise to this case remain in place. Plaintiff is therefore given two weeks from the date of this order to file a motion for leave to reinstate the injunctive relief claim. If such a motion is not filed—or if the motion is denied—summary judgment will be granted to defendants.

## ORDER

Upon consideration of defendants' motion for reconsideration, it is hereby ORDERED that:

1. The motion is GRANTED in that the court finds that defendants are entitled to qualified immunity. The plaintiff's claim for damages is therefore DISMISSED.

2. Plaintiff is given two weeks from the date of this order to file a motion for leave to reinstate the previously dismissed claim for injunctive relief. If no such motion is filed, the case will be dismissed in its entirety.

---

**2.** The fact that RFRA applies retroactively, *see* 42 U.S.C. § 2000bb–3, is not relevant to the qualified immunity analysis. *See Werner v. McCotter,* 49 F.3d 1476, 1481–82 (10th Cir.1995) (applying the pre-RFRA standard to determine the applicability of qualified immunity in a RFRA case).