Judge OHLSON,
dissenting.
In my view, the Religious Freedom Restoration Act (RFRA), 42 U.S.C. §§ 2000bb— 2000bb-4 (2012), provides the men and women of our nation's armed forces with the presumptive right to fully, openly, and spontaneously engage in religious exercise, This right extends to sincere religious conduct that is not specifically inquired by, or deemed by judges to be important to, the tenets of a semcememberis faith. Further, servieemembers who are court-martialed for sincere religious conduct may invoke the protections afforded by RFRA even if they did not obtain the permission of the Government before engaging in that conduct, and even if they did not contemporaneously inform their chain-of-command that their actions were religious in nature.
I conclude that the majority’s disposition of the instant case is not consistent with these rights under RFRA. Moreover, I conclude that the majority’s analysis of the underlying legal issue raises the prospect that other servieemembers in the future may be subjected to conviction at court-martial for merely engaging in religious exercise that is entitled to protection under the statute. Therefore, I must respectfully dissent.
I. Overview
To be clear at the outset, RFRA does not give members of the military carte blanche to do whatever they please, whenever they please, simply because they cloak their actions in the garb of religion. To the contrary, the preservation of good order and discipline *421 in the military often serves as a legitimate and powerful governmental interest, and in appropriate instances, the interests of the individual must yield to the interests of the whole. However, the mere talismanic invocation of “good order and discipline” must not be allowed to curtail the religious liberty of our nation’s servicemembers when the government’s actions are neither warranted nor statutorily authorized.
In the instant case, Lance Corporal (LCpl) Sterling testified at trial that she posted in her workspace three strips of paper that contained a paraphrase of a biblical passage.[1] She made clear that she did so because the signs were religious in nature, were evocative of the Trinity, and were intended to provide her with encouragement and comfort in a time of personal difficulty. In response to her conduct, LCpl Sterling’s noncommissioned officer (NCO) ordered her to take down the signs, and when the junior Marine declined to do so, the NCO removed the signs herself. LCpl Sterling was then court-martialed for, inter alia, disobeying the NCO’s order.
Under these circumstances, LCpl Sterling was entitled to have the United States Navy-Marine Corps Court of Criminal Appeals (CCA) analyze her conviction under the legal construct set forth in RFRA by Congress.[2] However, as both the Government and the majority concede, the.CCA applied a fundamentally flawed definition of what constitutes religious conduct under RFRA, The CCA’s decision thus deprived LCpl Sterling of a properly conducted review of her case under Article 66(e), Uniform Code of Military Justice, 10 U.S.C. § 866 (2012), which states that a CCA may affirm “only such findings of guilt ... as it finds correct in law and fact.” The majority’s decision to affirm this case on other grounds only serves to compound this problem.
I readily concede that even if the CCA had applied the correct legal standard in this case, LCpl Sterling may not have prevailed on the merits. It is not enough for a service-member to engage in activity with religious underpinnings; the servieemember’s actions must be a “sincere” expression of - religious belief. Therefore, if a servicemember seeks to use less-than-genuine religious beliefs as a pretext for inappropriate conduct, or even if a servicemember is sincerely religious but has mixed motives for acting upon those beliefs—such as invoking a biblical passage in order to engage in a passive-aggressive display of contempt for military leadership— the servicemember’s conduct will not pass muster under RFRA. See Burwell v. Hobby Lobby Stores, Inc., - U.S. -, 134 S.Ct. 2751, 2774 n.28, 189 L.Ed.2d 675 (2014) (“[Pjretextual assertion[s] of ... religious belief[s] ... fail [under RFRA].”); see also United States v. Quaintance, 608 F.3d 717, 722 (10th Cir.2010) (rejecting RFRA defense due to an ulterior, secular motive). Indeed, there is evidence in the record to suggest that the latter scenario may be precisely what we are confronted with in the instant case. Importantly, however, as the majority also recognizes, the CCA failed to examine this fundamental question, and this Court does not have the statutory fact-finding authority to do so on its own.
Unfortunately, instead of remanding this case so that it can be properly adjudicated by the court below, the majority instead has chosen to impose a stringent, judicially made legal standard in this and future religious liberty cases that is not supported by the provisions of RFRA. Contrary to the majority’s holding, the plain language of the statute does not empower judges to curtail various manifestations of sincere religious belief simply by arbitrarily deciding that a certain act was not “important” to the believer’s exercise of religion. Neither does the statute empower judges to require a believer to ask of the government, “Mother, may I?” before engaging in sincere religious conduct. And further, *422 nowhere in the statute are serviqemembers required to inform the government of the religious nature of their conduct at the time they engage in it. In sum, the majority opinion imposes a legal regime that conflicts with the provisions of RFRA, contradicts the intent of Congress, and impermissibly chills the religious rights of our nation’s service-members.
II. The Law
As stated in the statute itself, RFRA prohibits the “Government [from] substantially burden[ing] a person’s exercise of religion[,] even if the burden results from a rule of general applicability,” unless the government can “demonstrate[ ] that application of the burden to the person—(1) is in furtherance of a compelling governmental interest; and (2) is the least restrictive means of furthering that compelling governmental interest.” 42 U.S.C. § 2000bb-l(a), (b). As amended by its sister statute, the Religious Land Use and Institutionalized Persons Act of 2000 (RLUI-PA), RFRA covers “any [sincere] exercise of religion, whether or not compelled by, or central to, a system of religious belief.” 42 U.S.C. § 2000ce-5(7)(A) (emphasis added); see also 42 U.S.C. § 2000bb-2(4) (importing RLUIPA definition to RFRA); Hobby Lobby, 134 S.Ct. at 2774 n.28 (“To qualify for RFRA’s protection, an asserted belief must be ‘sincere’_”). This plain language provides a very broad aperture through which to view the type of religious conduct that is protected from governmental infringement. Indeed, RFRA guarantees Americans a degree of religious liberty that extends significantly beyond the rights afforded by the First Amendment. See Holt v. Hobbs, — U.S. -, 135 S.Ct. 853, 859-60, 190 L.Ed.2d 747 (2015) (noting that “Congress enacted RFRA in order to provide greater protection for religious exercise than is available under the First Amendment”); see generally 42 U.S.C. § 2000bb-(b).
As the majority acknowledges, there is no question that the protections afforded by RFRA apply with full effect to our nation’s armed forces. RFRA explicitly states that it applies to the “government,” which is then statutorily defined as including “a branch, department, agency, instrumentality, and official ... of the United States.” 42 U.S.C. § 2000bb-2(l). This certainly includes the military. See, e.g., Singh v. Carter, Civil Action No. 16-399, 2016 WL 837924, at *6 (D.D.C. Mar. 3, 2016); Singh v. McHugh, 109 F.Supp.3d 72 (D.D.C.2015); Rigdon v. Perry, 962 F.Supp. 150, 160 (D.D.C.1997). Even if this fact were not sufficiently obvious on the statute’s face, RFRA’s legislative history would dispel any remaining doubt. Congress was crystalline in its expectation that RFRA would apply to the military. S. Rep. No. 103-111, at 12 (1993) (“Under the unitary standard set forth in [RFRA], courts will review the free exercise claims of military personnel under the compelling governmental interest test.”); H.R. Rep. No. 103-88 (1993) (“Pursuant to [RFRA], the courts must review the claims of ... military personnel under the compelling governmental interest test.”). It therefore is without question that the military falls squarely within RFRA’s embrace.[3]
III. How RFRA Generally Applies to the Military Justice System
RFRA’s practical application in the military justice system is straightforward. When a convening authority refers charges against an accused based on activity that constitutes religious exercise, the accused may invoke RFRA to prevent prosecution and/or conviction.[4] See 42 U.S.C. § 2000bb-l(c) (“A person *423 whose religious exercise has been burdened in violation of [RFRA] may assert that violation as a ... defense in a judicial proceeding and obtain appropriate relief against a government.”); see also United States v. Christie, 825 F.3d 1048, 1055 (9th Cir.2016) (stating that “RFRA gives each person a statutory right not to have his sincere religious exercise substantially burdened by the government”). In this context, a servicemember seeking the protections afforded by RFRA must initially demonstrate that he or she was engaging in, or seeking to engage in, religious exercise. 42 U.S.C. § 2000bb-l(a). Religious exercise “involves ‘not only belief and profession but the performance of (or abstention from) physical acts’ that are ‘engaged in for religious reasons.’” Hobby Lobby, 134 S.Ct. at 2769-70 (citation omitted). A service-member does not need to prove that his or her conduct was either central to, or compelled by, his or her faith. Id. at 2770. Rather, a servicemember need only prove that his or her conduct was sincerely inspired by religion. Id. at 2774; see also Jolly v. Coughlin, 76 F.3d 468, 476 (2d Cir.1996) (“[SJcruti-ny [under RFRA] extends only to whether a claimant sincerely holds a particular belief and whether the belief is religious in nature. An inquiry any more intrusive would be inconsistent with our nation’s fundamental commitment to individual religious freedom ....”) (internal citation omitted); United States v. Manneh, 645 F.Supp.2d 98, 111 (E.D.N.Y.2008) (noting that the “[sincerity analysis ‘provides a rational means of differentiating between those beliefs that are held as a matter of conscience and those that are animated by motives of deception and fraud’ ”) (citation omitted).
A servicemember must next prove that his or her religious exercise was “substantially burden[ed]” by the government. 42 U.S.C. § 2000bb-l(a); see also Hobby Lobby, 134 S.Ct. at 2777-79. Although the statute does not define the term, “[i]t is well established that “when [a] statute’s language is plain, the sole function of the courts—at least where the disposition required by the text is not absurd—is to enforce it according to its terms.’ ” Lamie v. United States Trustee, 540 U.S. 526, 534, 124 S.Ct. 1023, 157 L.Ed.2d 1024 (2004) (citation omitted). Here, we are faced with such a scenario. “Substantial” is traditionally defined as “[considerable in amount,” Black’s Law Dictionary 1656 (10th ed. 2014), and “burden” as “[s]omething that hinders or oppresses,” id. at 236. It therefore is clear that a substantial burden exists where the government has considerably hindered or oppressed any sincere religious conduct. See, e.g., San Jose Christian Coll. v. City of Morgan Hill, 360 F.3d 1024, 1034-35 (9th Cir.2004) (using the dictionary definition of “substantial burden”). Contra Kaemmerling v. Lappin, 553 F.3d 669, 678 (D.C.Cir.2008) (using First Amendment precedent to conclude that a substantial burden requires a compelled violation of beliefs).[5]
Finally, if a servicemember has successfully made this threshold showing—i.e., demonstrated both that he or she engaged in sincere religious conduct and that the government substantially burdened that religious exercise—the burden shifts from the servicemember to the government, which then must justify its actions. 42 U.S.C. § 2000bb-l(b); see also Hobby Lobby, 134 S.Ct. at 2779. To do so, the government must prove not only that it was seeking to achieve a compelling governmental interest *424 when it burdened the servicemember’s religious exercise, but that there existed no other, less burdensome means to protect that interest. 42 U.S.C. § 2000bb-l(b). This standard is “exceptionally demanding,” Hobby Lobby, 134 S.Ct. at 2780, and requires a reviewing court to “look[ ] beyond [the government’s] broadly formulated interests ... and scrutinize! ] the asserted harm ... to particular religious claimants,” O Centro, 126 S.Ct. at 1220.
Of course, this review entails special considerations in the military context. It goes without saying that the military’s unique nature and mission give rise to the crucial interest of maintaining good order and discipline, an objective that is without analog in the civilian world. See, e.g., Brown v. Glines, 444 U.S. 348, 354, 100 S.Ct. 594, 62 L.Ed.2d 540 (1980) (noting that the military has a “substantial Government interest” in maintaining “a respect for duty ... discipline” (internal quotation marks omitted) (citation omitted)); see also United States v. Caldwell, 75 M.J. 276, 281-82 (C.A.A.F.2016) (emphasizing the same). To be clear then, the military’s need to maintain good order and discipline may in certain circumstances trump an individual servicemember’s presumptive right to engage in religious exercise.
But while the military’s asserted interest in good order and discipline surely deserves great deference, it does not demand reflexive devotion. Rather, in each case an individualized determination must be made about whether the military’s interest was eompel-ling, and whether in realizing that interest, the military could have employed means that were less burdensome on the servicemem-ber’s religious liberties. And in so doing, attention must be paid to the fact that by enacting RFRA, “Congress ... placed a thumb on the scale in favor of protecting religious exercise.” McHugh, 109 F.Supp.3d at 92.[6] The plain language of the statute mandates this approach, and it is not our role to question the lawfully enacted policies of Congress.
IV. How RFRA Applies in This Specific Case
At trial, LCpl Sterling adequately demonstrated that the actions for which she was being court-martialed constituted “religious” conduct.[7] LCpl Sterling testified that both the substance and placement of her signs were inspired by her Christian faith. The slips of paper that LCpl Sterling placed on her workspace were organized in the form of the “trinity,” an unmistakable Christian motif, and on them was printed a biblically inspired quotation: “No sword formed against me shall prosper,” This, LCpl Sterling suggested at trial, was done because she is “a religious person” and therefore viewed the printouts as providing her with the “protection of three.” Thus, there is no doubt that LCpl Sterling’s conduct required further analysis under the provisions of RFRA. However, the CCA concluded otherwise.
In its decision, the CCA held: “[W]e believe the definition of a ‘religious exercise’ requires the practice [to] be ‘part of a system *425 of religious belief.’” United States v. Sterling, No. NMCCA 201400150, 2015 WL 832587, at *5 (N-M.Ct.Crim.App. Feb. 26, 2015). The CCA then went on to “reject .... [Appellant's invitation to define ‘religious exercise’ as any action subjectively believed by the appellant to be ‘religious in nature.’ ” Id. The CCA was wholly mistaken.
It has long been recognized that courts are particularly ill equipped to govern what does or does not constitute “religion.” See Thomas, 450 U.S. at 715, 101 S.Ct. 1425 (noting that “the judicial process is singularly ill equipped to resolve ,,. [intrafaith] differences [among followers of a particular creed]”); Africa v. Pennsylvania, 662 F.2d 1025, 1031 (3d Cir.1981) (“Judges are ill-equipped to examine the breadth and content of an avowed religion....”). Instead, as the Supreme Court recognized in the First Amendment context, the exclusive role of a reviewing court “is to decide whether the beliefs professed ... are sincerely held and whether they are, in [a servicemember’s] own scheme of things, religious.” United States v. Seeger, 380 U.S. 163, 185, 85 S.Ct. 850, 13 L.Ed.2d 733 (1965); see also Manneh, 645 F.Supp.2d at 112 (“[W]hile courts may be poorly equipped to determine what is religious, they are seasoned appraisers of the ‘motivations’ of parties and have a duty tun-der RFRA] to determine whether what is' professed to be religion is being asserted in good faith.”). It is therefore the case that “[i]mpulses prompted by dictates of conscience as well as those engendered by divine commands are ... safeguarded against secular intervention, so long as the [servicemem-ber] conceives of the beliefs as religious in nature.” Patrick v. LeFevre, 745 F.2d 153, 158 (2d Cir.1984); accord Thomas, 450 U.S. at 715, 101 S.Ct. 1425 (“Courts should not undertake to dissect religious beliefs [of a] believer .,. [even, if] his [or her] beliefs are not articulated with ... clarity [or] precision .... ”); see also Korte v. Sebelius, 735 F.3d 654, 685 (7th Cir.2013) (“[T]he judicial duty to decide substantial-burden questions under RFRA does not permit the court to resolve religious questions or decide whether the claimant’s understanding of his faith is mistaken,”).
As a result, the CCA’s flawed understanding of RFRA prevented it from addressing whether LCpl Sterling’s conduct was sincerely founded on her religious beliefs and, as a corollary, whether LCpl Sterling was engaged in “religious exercise”—the very first prong of RFRA. Such a determination must be built solidly on facts and, by statute, this fact-finding function lies solely in the unique province of the courts of criminal appeals; it does not lie within the purview of this Court. Thus, the proper disposition of this case is as clear as it is narrow. This Court should remand this case to the CCA so that it can properly consider, the factual basis for .LCpl Sterling’s RFRA claim with a correct understanding of,the law.[8] To this end, it is the CCA’s prerogative to determine whether this is possible on the record or whether it is necessary to order a DuBay[9] hearing. Either way, the CCA should correctly consider the issues presented in this case. LCpl Sterling deserves no less, and we should seek to address nothing more.[10]
V. The Majority’s Substantial Burden Analysis Cannot Be Reconciled with RFRA
I disagree with four aspects of the majority’s substantial burden analysis. First, the *426 majority creates a requirement that the religious conduct must be “important” to the servieemember’s faith in order to merit protection under RFRA. This directly contradicts the routine recognition that “[i]t is not within the judicial ken to question the centrality of particular beliefs or practices to a faith, or the validity of particular litigants’ interpretations of those creeds.” Hernandez v. Commissioner of Internal Revenue, 490 U.S. 680, 699, 109 S.Ct. 2136, 104 L.Ed.2d 766 (1989); see also Sample v. Lappin, 424 F.Supp.2d 187, 193 (D.D.C.2006) (noting the same in its RFRA analysis). In fact, the statute explicitly states that religious exercise does not have to be compelled by or central to a system of religious belief. See 42 U.S.C. §§ 2000bb-2(4), 2000cc-5(7)(A). Thus, the apparent assertion that religious conduct must be “important” to the servicemember’s faith in order to merit protection under RFRA is mistaken.
Second, the majority’s approach creates a novel notice requirement. But nowhere in RFRA’s text, its legislative history, or the relevant case law does there appear any indication that the government must be conscious (or even sensitive to the possibility) that its actions may impermissibly curtail religious exercise in order for a successful RFRA defense to lie. Cf. Lappin, 424 F.Supp.2d at 193 (noting that “[wjhether plaintiff declared his Jewish faith at the time of his incarceration is of no moment [to whether his religious conviction was sincere]”). Indeed, RFRA was in many ways designed to apply where the First Amendment could not—that is, in the face of generalized, «intentional religious encumbrance. See generally 42 U.S.C. § 2000bb(a)(2) (“[L]aws [that are] ‘neutral’ toward religion may burden religious exercise as surely as laws intended to interfere with religious exercise.”); Holt, 135 S.Ct. at 859-60 (“Congress enacted RFRA in order to provide greater protection for religious exercise than is available under the First Amendment.”).
Third, the majority mistakenly follows the Government’s lead and considers LCpl Sterling’s failure to avail herself of the Navy’s accommodation framework. In the instant case, however, the Navy’s accommodation regime is irrelevant. LCpl Sterling is challenging her NCO’s order to remove her religiously inspired signs; she is not challenging the general provisions of the Navy’s accommodation framework, nor is she challenging how that framework was applied in her specific case. Under such circumstances, if a service-member demonstrates that he or she has met the first prong of RFRA, the focus must then be placed squarely on the scope, nature, and effect of the burden placed by the government on the servicemember’s religious exercise—not on whether the servicemember could have sought “permission” from the government before engaging in the religious exercise.[11]
Fourth, and finally, the majority takes the position that the Supreme Court’s historical understanding of the term “substantial burden”—specifically, in the First Amendment context—makes clear that a claimed burden must be based on an affirmative violation of one’s religion in order to qualify as “substantial.” Thus, in the majority’s view, because Appellant neither indicated that her religion requires her to post signs nor claimed that *427 her religion prevents her from removing those signs, Appellant’s conduct lies beyond the ambit of RFRA’s embrace. But this approach unjustifiably narrows RFRA’s substantial burden requirement.
Even if Congress implicitly sought to codify the understanding of “substantial burden” that was woven into the Supreme Court’s First Amendment case law, nothing in that precedent indicates that a governmentally urged violation of one’s religious beliefs is the exclusive means for effecting a substantial burden. See, e.g., Ford v. McGinnis, 352 F.3d 582, 593 (2d Cir.2003) (Sotomayor, J.) (“Whether a particular practice is religiously mandated is surely relevant to resolving whether a particular burden is substantial. [But] the Supreme Court ,.. [has never] held that a burdened practice must be mandated in order to sustain a ... free exercise claim- To confine .,. protection ... to only those religious practices that are mandatory would necessarily lead us down the unnavigable road of attempting to resolve intra-faith disputes over religious law and doctrine.... We therefore decline to adopt a definition of substantial burden that would require claimants to show that they either have been prevented from doing something their religion says they must, or compelled to do something their religion forbids.” (citations omitted)); see generally Thomas, 450 U.S. at 715, 101 S.Ct. 1425. That is to say, a compelled violation of one’s religion may be sufficient for finding a substantial burden, but this does not also mean that it is necessary for such a finding. Therefore, I cannot adopt the majority’s unduly narrow definition of the term and believe it to be inconsistent with both the plain language and clear purpose of RFRA.
VI. Conclusion
The majority opinion ventures beyond that which is necessary to decide the issue before us. In the course of doing so, the Court not only fails to ensure the proper application of RFRA to LCpl Sterling’s specific case, it more generally imposes a legal framework that unnecessarily curtails the religious freedom of our nation’s servicemembers. For this reason, I must respectfully dissent.

, The printed phrase was: "No weapon formed against me shall prosper.” This is a paraphrase of the biblical passage stating, “No weapon that is formed against thee shall prosper.” Isaiah 54:17 (King James).

. The majority devotes significant attention to the numerous leadership challenges presented by Appellant. However, RFRA does not predicate its applicability on the obedience, punctuality, demeanor, or performance of the person engaging in religious exercise.

. This is further evidenced by Department of Defense, Instruction 1300.17, which addresses the "[a]ccommodation of [r]eligious [practices [w]ithin the [military" and explicitly incorporates RFRA. Dep’t of Defense (DoD), Instr. 1300.17, Accommodation of Religious Practices Within the Military Services, para. 4.e.(l) (Feb. 10, 2009, Incorporating Change 1, Jan. 22, 2014) ("[Requests for religious accommodation from a military policy, practice, or duty that substantially burdens a Service member's exercise of religion may be denied only when the military policy, practice, or duty: (a) Furthers a compelling governmental interest; [and] (b) Is the least restrictive means of furthering that compelling governmental interest.”).

. The assertion by the Government that a ser-vicemember must utter the mantra "Religious Freedom Restoration Act” at trial in order to be afforded the protections of that statute is utterly unfounded. Not only is "RFRA ... the law regardless of whether parties mention it,” see Mus *423 lim v. Frame, 897 F.Supp. 215, 216 (E.D.Pa.1995), but LCpl Sterling unmistakably argued that the order was unlawful because of her religious beliefs. She even went as far as to submit the DoD Instruction that incorporates RFRÁ’s framework.

. As demonstrated by Kaemmerling, there is a distinct split among the federal circuit courts of appeals that have analyzed this prong of RFRA. The Supreme Court has yet to address this point, likely because the government typically concedes the existence of a substantial burden—even in cases where the challenged action does not compel an affirmative violation of a person's religious beliefs. See, e.g., Gonzales v. O Centro Espirita Beneficente Uniao do Vegetal, 546 U.S. 418, 428, 126 S.Ct. 1211, 163 L.Ed.2d 1017 (2006). But see Priests For Life v. Dep't of Health & Human Servs., 772 F.3d 229, 244 (D.C.Cir.2014), vacated and remanded sub nom. Zubik v. Burwell, - U.S. -, 136 S.Ct. 1557, 194 L.Ed.2d 696 (2016) (per curiam) (explicitly declining to answer this question).

. When analyzing RFRA cases, the language of the statute controls—even in the military. I acknowledge the majority's concern about potentially establishing a "disobey first, explain later” approach to religious liberty in the armed forces. However, under the provisions of RFRA as enacted by Congress, servicemembers who engage in religious exercise pursuant to their statutory rights are not, in fact, disobeying a lawful order. Therefore, in such instances the "disobey first, explain later” concept is inapt; the statutory scheme provided by Congress is more akin to "exercise first, defend later if necessary.” Indeed, consistent with the statute’s provisions as crafted by Congress, servicemembers are not constrained from asserting a RFRA defense at any point in the disciplinary process. The question of whether this is the best approach in the military is a legislative determination, not a judicial one. And finally, it is important to note that those servicemembers who do disobey a lawful order and then improperly seek the protection of RFRA at a later date can be treated by the military in the same manner as any other servicemember who disobeys a lawful order for nonreligious reasons—to include being convicted at court-martial.

. This is not to say that LCpl Sterling proved she was engaging in "religious exercise.” As ex- - plained above, in order for a RFRA claimant to prevail on this prong, he or she must demonstrate that the conduct was religiously inspired and that it was sincere. A mere showing that the servicemember engaged in conduct that had religious overtones is not sufficient.

. To be clear, this conclusion in no way purports to suggest that LCpl Sterling should have or would have prevailed on the merits if the majority had ordered a remand. My position is based squarely on the fact that the CCA’s obvious legal error deprived LCpl Sterling of an appropriate legal and factual review of her case.

. See generally United States v. DuBay, 17 C.M.A. 147, 37 C.M.R. 411 (1967).

. Any consideration of Appellant's claim, even ■ after a proper RFRA analysis, would be incom-píete without answering a question of fact that has not yet been considered, let alone addressed, by either the military judge or the CCA: Was LCpl Sterling’s conduct sincere? This question lies beyond the proper scope of our authority, and because the answer is essential to the proper resolution of this case, we have but one option: Remand. Cf. United States v. Edwards, 46 M.J. 41, 46 (C.A.A.F.1997) (remanding case for further proceedings where relevant facts were not developed to resolve legal issue).

. The majority is correct that "an option to request an accommodation” can, in some cases, be relevant to a court’s analysis under RFRA. United States v. Sterling, 75 M.J. 407, 419-20 (C.A.A.F.2016). For example, the presence and nature of an accommodation mechanism would be appropriately considered in a case involving a challenge to a regulatory framework writ large. See, e.g., Hobby Lobby, 134 S.Ct. at 2782; see also Little Sisters of the Poor Home for the Aged v. Burwell, 794 F.3d 1151, 1178 (10th Cir.2015) (addressing whether an accommodation framework itself creates a substantial burden), vacated and remanded sub nom. Zubik, - U.S. -, 136 S.Ct. 1557, 194 L.Ed.2d 696. Here, however, we are not faced with such a scenario, and the focus exclusively belongs on the NCO's order. See, e.g., Singh, 2016 U.S. Dist. LEXIS 26990, at *27-37, 2016 WL 837924, at *9-11 (holding that a military order to undergo testing was violative of RFRA even though the order was issued to allow the Army to determine whether to grant a religious accommodation to a Sikh officer). Whether LCpl Sterling could have sought permission for her conduct is therefore irrelevant to the legality of her NCO's order to remove LCpl Sterling’s religiously inspired signs. To hold otherwise would subvert the very purpose of RFRA.